2022-1815, 2022-2005, 2022-2113

# United States Court of Appeals for the Federal Circuit

NEXSTEP, INC.,
*Plaintiff-Appellant,*

v.

COMCAST CABLE COMMUNICATIONS, LLC,
*Defendant-Cross-Appellant.*

Appeal from the United States District Court for the District of Delaware, Case No. 1:19-cv-01031-RGA, Judge Richard G. Andrews

**NEXSTEP, INC.'S RESPONSE AND REPLY BRIEF**


Paul J. Andre
Lisa Kobialka
James R. Hannah
Christina M. Finn
KRAMER LEVIN NAFTALIS & FRANKEL LLP
333 Twin Dolphin Dr., Suite 700
Redwood Shores, CA 94065
Telephone: (650) 752-1700

Aaron M. Frankel
Cristina Martinez
Carlos J. Tirado
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100

***ATTORNEYS FOR NEXSTEP, INC.***

# CERTIFICATE OF INTEREST

Counsel for Appellant NexStep, Inc. certifies the following:

1. The full name of all entities represented by us is:

NexStep, Inc.

2. The full name of all real parties in interest for the entities represented by us. Do not list the real party if it is the same as the entity:

Not applicable.

3. All parent corporations and any other publicly held companies that own 10 percent or more of the stock of the party:

None.

4. The names of all law firms and the partners or associates that have not entered an appearance in the appeal, and (a) appeared for the entity in the lower tribunal; or (b) are expected to appear for the entity in this court:

Jonathan S. Caplan, Benu Wells, Marcus A. Colucci, Hien Lien, and Missy G. Brenner of Kramer Levin Naftalis & Frankel LLP

Gregory Proctor of Benesch, Friedlander, Coplan & Aronoff LLP (formerly of Kramer Levin Naftalis & Frankel LLP)

Philip A. Rovner and Jonathan A. Choa of Potter Anderson & Corroon, LLP.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

Reexamination No. 90/014,991 (USPTO)
Reexamination No. 90/015,074 (USPTO)

6. Organizational Victims and Bankruptcy Cases. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in

criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6):

Not applicable.

Dated: January 20, 2023

*<u>/s/ Paul J. Andre</u>*
Paul J. Andre
Lisa Kobialka
James R. Hannah
Christina M. Finn
Kramer Levin Naftalis & Frankel LLP
333 Twin Dolphin Dr., Suite 700
Redwood Shores, CA 94065
Tel: (650) 752-1700
Fax: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
cfinn@kramerlevin.com

Aaron M. Frankel
Cristina Martinez
Carlos J. Tirado
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Tel: 212.715.9100
Fax: 212.715.8000
afrankel@kramerlevin.com
cmartinez@kramerlevin.com
ctirado@kramerlevin.com

*Attorneys for Plaintiff-Appellant*
NexStep, Inc.

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ........................................................................ 1

ARGUMENT ........................................................................................ 4

I. THE JURY'S INFRINGEMENT VERDICT SHOULD BE REINSTATED........................................................................................ 4

A. The DOE Issue Was Limited to the Straightforward Question of if a Short Sequence of Screen Taps is Equivalent to a "Single Action" ........................................................ 4

B. Comcast's Criticisms of Dr. Selker's Testimony Fail to Justify the District Court's Erroneous Grant of JMOL ......................... 8

1. Dr. Selker Identified the Specific User Actions that are Equivalent to a Single Action ................................................ 8

2. Dr. Selker Clearly Explained How the Sequence of User Actions Triggers the Troubleshooting-Steps .................. 11

3. Dr. Selker Explained Why a Short Sequence of Screen Taps is Insubstantially Different From a Single Action........................................................................ 13

a) Dr. Selker Addressed the Function Prong ...................... 15

b) Dr. Selker Addressed the Way Prong ............................ 15

c) Dr. Selker Addressed the Result Prong .......................... 17

C. Comcast Ignores That Common Sense is Sufficient to Sustain the Jury's DOE Verdict ...................................................... 18

D. The Jury's DOE Infringement Verdict Does Not Vitiate the "Single Action" Limitation ......................................................... 20

II. SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '802 PATENT SHOULD BE REVERSED BECAUSE IT WAS BASED ON AN ERRONEOUS CONSTRUCTION OF "VOIP" ........ 24

A. The District Court Erred in Construing "VoIP" to Require Two-Way Conversations Between People ........ 24

1. The Specification Confirms VoIP is Not Limited to Two-Way Conversations Between People ........ 24

2. The File History Confirms VoIP is Not Limited to Two-Way Conversations ........ 26

3. Claim Differentiation Confirms VoIP is Not Limited to Two-Way Conversations ........ 27

B. Even Under the District Court's Erroneous Construction, Material Factual Disputes Precluded Summary Judgment ........ 30

III. THE DISTRICT COURT ABUSED ITS DISCRETION IN EXCLUDING NEXSTEP'S DAMAGES CASE ........ 34

A. Mr. Reading's Starting Point for Dividing the Cost Savings to Comcast From its Infringement Was Based on the Facts of the Case ........ 34

B. NexStep Should Be Permitted to Provide a Revised Damages Case ........ 39

1. NexStep Asked the District Court For an Opportunity to Supplement its Damages Case ........ 39

2. A Reasonable Royalty Must Be Awarded Where Infringement Is Found ........ 40

CROSS-APPEAL OPPOSITION ........ 44

IV. STANDARD OF REVIEW FOR CROSS-APPEAL ISSUES ........ 44

V. THE ‘009 PATENT IS DIRECTED TO CONCRETE, PATENT-ELIGIBLE INVENTIONS ....................................................45

A. The District Court’s Order Denying Summary Judgment is Not Reviewable and Comcast Waived its New Eligibility Argument ....................................................45

B. The District Court Properly Denied Comcast’s Motion for Summary Judgment Because the ‘009 Patent Claims are Patent Eligible ....................................................47

1. The ‘009 Patent Claims are Directed to a Specific, New Method of Providing Customer Support that Improved Existing Systems ....................................................48

2. The ‘009 Patent Claims are Patent Eligible Under *Alice* Step 1 ....................................................51

3. The Asserted Claims are Patent Eligible Under *Alice* Step 2 ....................................................57

4. At Minimum, Genuine Disputes of Material Fact Preclude Summary Judgment ....................................................60

CONCLUSION ....................................................61

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*,
694 F. 3d 1312 (Fed. Cir. 2012) ....................39

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
811 F.3d 1334 (Fed. Cir. 2016) ....................20

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014)....................46, 54

*American Calcar, Inc. v. American Honda Motor Co.*,
651 F.3d 1318 (Fed. Cir. 2011) ....................23

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014) ....................41, 43

*Apple Inc. v. Wi-LAN Inc.*,
25 F.4th 960 (Fed. Cir. 2022) ....................43

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
960 F.2d 1020 (Fed. Cir. 1992) ....................4

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ....................44, 58, 59, 60

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020) ....................20

*Brown v. Zurich-Am. Ins. Co.*,
137 F. App'x 476 (3d Cir. 2005) ....................46

*Centrak, Inc. v. Sonitor Techs., Inc.*,
915 F.3d 1360 (Fed. Cir. 2019) ....................44

*CLS Bank Int'l v. Alice Corp. Pty.*,
717 F.3d 1269 (Fed. Cir. 2013) ....................46

*Coop. Ent., Inc. v. Kollective Tech., Inc.*,
50 F.4th 127 (Fed. Cir. 2022) ....................44, 57

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
880 F.3d 1356 (Fed. Cir. 2018) ....................47, 55

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018) ....................56

*Dow Chem. Co. v. Mee Indus., Inc.*,
341 F.3d 1370 (Fed. Cir. 2003) ....................41, 43

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 1335-39 (Fed. Cir. 2016)....................51

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
955 F.3d 1317 (Fed Cir. 2020) ....................46, 47

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
879 F.3d 1299 (Fed. Cir. 2018) ....................54

*Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*,
784 F.3d 177 (3d Cir. 2015) ....................45

*Intellectual Ventures I LLC v. Erie Indem. Co*.,
850 F.3d 1315 (Fed. Cir. 2017) ....................59

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
274 F.3d 1371 (Fed. Cir. 2001) ....................4, 14, 15

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019) ....................53, 56

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ....................52, 53, 54

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
429 F.3d 1344 (Fed. Cir. 2005) ....................43

*Nat'l Presto Indus., Inc. v. W. Bend Co.*,
76 F.3d 1185 (Fed. Cir. 1996) ....................14, 18

*Nice Sys. Ltd. v. Clickfox, Inc.*,
207 F. Supp. 3d 393 (D. Del. 2016)....................55

*Nutrinova Nutrition Specialties & Food Ingredients GmbH v. Int'l Trade Comm'n*,
224 F.3d 1356 (Fed. Cir. 2000) ....................14

*Paice LLC v. Toyota Motor Corp.*,
504 F.3d 1293 (Fed. Cir. 2007) ....................11

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................26

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
904 F.3d 965 (Fed. Cir. 2018) ....................43

*Stecyk v. Bell Helicopter Textron, Inc.*,
295 F.3d 408 (3d Cir. 2002) ....................39

*Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*,
872 F.2d 978 (Fed. Cir. 1989) ....................4, 18

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020) ....................41

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
135 S. Ct. 831 (2015)....................44

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
90 F.3d 1558 (Fed. Cir. 1996) ....................10

*Uniloc USA, Inc. v. Big Fish Games, Inc.*,
320 F. Supp. 3d 1178 (W.D. Wash. 2018) ....................55

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) ....................33, 38

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) ....................38

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015) ....................41

**Statutes**

35 U.S.C. § 101 ....................*passim*

35 U.S.C. § 284 .......... 40, 41

**Other Authorities**

Fed. R. Civ. P. 56(a) .......... 44

Fed. R. Civ. P. 50 .......... 3, 45, 46

## SUMMARY OF ARGUMENT

The District Court erred in substituting its judgment for the jury's and vacating the jury's infringement verdict. The jury found that Comcast infringes NexStep's '009 Patent based on substantial evidence of infringement. The District Court's sole basis for reversing the jury's verdict was a finding that the testimony of Dr. Selker, NexStep's expert, was insufficiently detailed on the very narrow doctrine of equivalents ("DOE") question. At issue, however, was the simple question of whether customers' short sequences of screen taps to initiate troubleshooting are equivalent to a "single action," which Dr. Selker amply addressed. Thus, the jury's resolution of this straightforward factual question, which could have been based on common sense alone without any reliance on expert testimony, should have been untouched. There was substantial evidence given at trial for the jury to have concluded that a short sequence of screen taps is at least equivalent to a "single action."

Comcast relies on misdirection to attempt to justify the District Court's negation of the jury's infringement verdict. To try to make the simple DOE question seem more complicated, Comcast focuses its argument on other claim limitations that were not the subject of the DOE presentation at trial and were not the basis for the District Court's grant of JMOL. On those other limitations, the jury found literal

infringement. At most, Comcast's arguments identify factual disputes that the jury resolved in NexStep's favor and that are not at issue on this appeal.

Comcast also fails to justify the District Court's legal error when it narrowly construed the '802 Patent's voice over Internet Protocol ("VoIP") limitation to require two-way voice conversations between people. VoIP requires only the transmission of voice over the Internet, which Comcast admits its accused products do. There is nothing in the intrinsic or extrinsic record to justify adding into the VoIP limitation requirements that the voice data be transferred in two directions or involve two people. Moreover, factual issues reserved for the jury precluded the District Court's grant of summary judgment, even under its erroneous claim construction. Accordingly, the District Court's summary judgment finding of non-infringement of the '802 Patent should be reversed.

On the issue of damages, Comcast fails to justify the exclusion of NexStep's damages case. The District Court found no fault in NexStep's expert opinion showing that Comcast was realizing very substantial cost savings through its infringement of the '009 Patent that would be an appropriate royalty base. There was no basis to exclude the opinion of NexStep's damages expert that negotiations would have started with a 50/50 split of those cost savings because it was based on the specific facts of this case, satisfying this Court's precedent. At a minimum,

NexStep should have been granted an opportunity to remedy the purported issues in its damages case.

Comcast's cross-appeal should be denied because Comcast waived its arguments. This is both because Comcast failed to renew them in a Rule 50 motion, and because Comcast articulates a new purported "abstract idea" for the first time on appeal. In any event, the District Court properly denied Comcast's motion for summary judgment because the challenged claims are non-abstract and thus patent-eligible under 35 U.S.C. § 101. As Comcast itself asserts, these claims "are ***directed to specific*** methods and devices" to improve pre-existing customer service systems. Comcast Br. at 5. Thus, the challenged claims are patent eligible and Comcast's cross-appeal should be denied.

# ARGUMENT

## I. THE JURY'S INFRINGEMENT VERDICT SHOULD BE REINSTATED

### A. The DOE Issue Was Limited to the Straightforward Question of if a Short Sequence of Screen Taps is Equivalent to a "Single Action"

The District Court's grant of JMOL and, thus, the scope of this appeal as to infringement of the '009 Patent, is limited to a single discrete issue: if there was substantial evidence to support the jury's factual finding that Comcast's MyAccount App satisfies the Single-Action Limitation under DOE. Appx12-17. Because there was substantial evidence, reversal and reinstatement of the jury's infringement verdict is warranted. *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1376 (Fed. Cir. 2001) ("We will not disturb a jury finding of infringement by equivalents unless 'the evidence so favors [the accused infringer] that reasonable jurors could not arrive at a contrary verdict.") (quoting *Gen. Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1409 (Fed. Cir. 1994)); *Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*, 872 F.2d 978, 988 (Fed. Cir. 1989) (reversing grant of JMOL because jury's infringement verdict was "sustainable on the evidence and the law"), *overruled on other grounds by A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020 (Fed. Cir. 1992).

Much of Comcast's brief is directed to irrelevant arguments about the sufficiency of the evidence that the MyAccount App satisfies the limitations that

relate to functionality that ***follows*** the Single-Action Limitation. As illustrated schematically below, the asserted claims of the '009 Patent require a single action by a user to initiate a troubleshooting process (the "Single-Action Limitation"). NexStep Brief ("Br.") at 23. In response to that single action, the concierge device then causes a home gateway to take various actions (the "Troubleshooting-Steps Limitation"), culminating in the initiation of an automated support protocol or accessing customer support while bypassing an automated attendant or interactive voice recognition system. *Id*. at 28-33, 42-45.




Specifically, Claim 1 of the '009 Patent recites that, "responsive to a single action performed by a user," "the concierge device communicat[es] with a home gateway" and causes the home gateway to "buffer consumer device identification information . . . determine a support center for a support session; and . . . initiate the

support session . . . and to forward automatically the consumer device identification information." Appx210.

Throughout its response brief, Comcast conflates the Single-Action Limitation, which is directed to the actions taken by a ***user*** to initiate troubleshooting, with the Troubleshooting-Steps Limitations, which are directed to the actions the ***home gateway*** (not the user) takes in response to the user's single action. Comcast Br. at *e.g.*, 36-38.

The Single-Action Limitation was the ***only*** limitation for which NexStep argued infringement under DOE, as Comcast acknowledges. Br. at 23; *see also* Comcast Br. at 26 ("NexStep's sole theory under the DOE was that a 'single action' was equivalent to many user actions"). In particular, NexStep argued that, to the extent a short sequence of screen taps is required to trigger the home gateway to undertake the Troubleshooting-Steps Limitations and those several screen taps are not literally a "single action," those screen taps are still equivalent to a single action. Br. at 33-36, 47-51.

Critically, for all other claim limitations, including the Troubleshooting-Steps Limitations that Comcast focuses on in its brief, NexStep only argued literal infringement and did not argue infringement under DOE. *See, e.g.,* Appx444-445 (Trial Tr.), 382:20-384:10 (limiting DOE analysis to Single-Action Limitation). Therefore, in finding infringement under DOE, the jury agreed with NexStep (1) that

the Single-Action Limitation is satisfied under DOE and (2) that all other limitations, including the Troubleshooting-Steps Limitations, are literally satisfied.

For this reason, the only relevant question on appeal is if there was substantial evidence to support the jury's conclusion that a short sequence of screen taps is at least equivalent to the Single Action Limitation, as Comcast itself concedes in its brief. Br. at 23; Comcast Br. at 48 ("the only question on appeal is whether ***multiple*** user actions are equivalent to a single user action.") (emphasis in original).

Comcast's arguments regarding the sufficiency of the proofs of the separate Troubleshooting-Steps Limitation are, thus, irrelevant to this appeal. Comcast Br. at 32-42, 46-48. The jury implicitly found these limitations to be literally satisfied and it was not the basis for the District Court's grant of JMOL. Thus, Comcast is attempting to reargue factual issues that the jury resolved against it and that Comcast did not appeal. In addition, as discussed in Section III(B)(2), even if the Troubleshooting-Steps Limitations were at issue, there was more than substantial evidence to sustain the jury's finding that this limitation is literally present in MyAccount.

### B. Comcast's Criticisms of Dr. Selker's Testimony Fail to Justify the District Court's Erroneous Grant of JMOL

#### 1. Dr. Selker Identified the Specific User Actions that are Equivalent to a Single Action

Dr. Selker provided extensive testimony regarding the specific user actions that are at least equivalent to a single action. Br. at 28-41 (collecting testimony). Comcast's claim that JMOL was justified because Dr. Selker failed to do so is untenable and cannot be reconciled with the record. Comcast repeats the District Court's mistaken claim that "Dr. Selker's DOE testimony . . . fails to describe what steps in Comcast's app are equivalent to the 'single action' limitation. He only mentions 'several button presses.'" Appx14. These quotes reveal the District Court's fundamental error in interpreting the record, seven months after the presentation of testimony, and show Comcast's failure to grapple with the entirety of Dr. Selker's testimony.

In particular, as discussed in NexStep's opening brief, Dr. Selker's infringement testimony included a detailed analysis of three infringing troubleshooting flows: (1) Xfinity Assistant Infringement (an artificial intelligence, fully automated troubleshooting flow), (2) Troubleshooting-Card Infringement (when a user selects a specific device to troubleshoot), and (3) Diagnostic-Check Infringement (when a user instructs the MyAccount App to run a diagnostic checkup on a device). Br. at 28-33 (collecting evidence).

In each of the three infringement scenarios, Dr. Selker explained the specific actions that the user takes to initiate troubleshooting and trigger the Troubleshooting-Steps Limitations. For example, in addition to explaining the Xfinity Assistant Infringement flow, Dr. Selker showed the jury a video of a user performing the steps to initiate the infringing troubleshooting process, leaving no ambiguity as to the actions required to initiate the process. Appx428-429, 318:19-322:8; Appx446, 388:2-390:7. In addition to Dr. Selker's testimony and the documents Dr. Selker showed to the jury, NexStep presented additional evidence through its cross-examination of Comcast's fact and expert witnesses, further identifying the user actions that trigger the home gateway to perform the Troubleshooting-Steps Limitations. Br. at 28-41 (collecting evidence).

The substantial record evidence of the user's steps satisfying the Single-Action Limitation is summarized in the table below. As the table reflects, NexStep presented the jury with ample evidence identifying the relevant steps, such that there was no ambiguity as to the user steps at issue for Dr. Selker's DOE testimony.

| **Infringement Scenario** | **Users' Steps** | **Record Citation** |
|---|---|---|
| Xfinity Assistant Infringement | Start MyAccount App, log in if necessary, then tap XfinityAssistant icon | Appx428-429, 318:19-322:8; Appx434, 340:11-341:8, Appx437, 353:15-354:5. |
| Troubleshooting-Card Infringement | Start MyAccount App, log in if necessary, tap a specific device, then tap "Troubleshoot" button. | Appx434, 340:11-341:8, Appx437, 353:15-354:5; Appx560, 689:10-20. |

| Infringement Scenario | Users' Steps | Record Citation |
|---|---|---|
| Diagnostic-Check Infringement | Start MyAccount App, log in if necessary, select a specific device, then tap the "Run Diagnostic Check" button. | Appx431, 329:13-330:16; Appx434, 340:11-341:8; Appx437, 353:15-354:5; Appx563, 700:25-701:21. |

After his detailed literal infringement analysis, Dr. Selker provided his DOE analysis directly addressing Comcast's argument that a short sequence of screen taps is not a single action. Br. at 33-41. In particular, Dr. Selker used the function/way/result test to show that the short sequences of screen taps that he discussed with respect to literal infringement were equivalent to a single action (to the extent they were not literally a single action). *Id.* Dr. Selker relied on the exact same infringement scenarios for DOE as for literal infringement. Appx444-445, 382:20-385:15. Thus, there was no need for Dr. Selker to repeat his prior discussion of the user actions comprising the single action because he had already provided a detailed identification of these actions in connection with his literal infringement testimony.

To support its argument, Comcast cites *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558 (Fed. Cir. 1996), and asserts that Dr. Selker provided only "generalized testimony as to the overall similarity of the claimed and accused processes," without identifying the sequence of screen taps at issue. Comcast Br. at 39-40. Comcast's reliance on *Texas Instruments* is misplaced

because Dr. Selker had already specifically identified the specific customer actions at issue prior to giving his DOE opinion. In a subsequent decision, this Court clarified that its '"particularized testimony' standard does not require [an expert] to re-start his testimony at square one when transitioning to a doctrine of equivalents analysis." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1305 (Fed. Cir. 2007) (citation omitted). Instead, it is "desirable for a witness to incorporate earlier testimony in order to avoid duplication," and an expert may do so "implicitly." *Id.*

Here, during his literal infringement testimony, Dr. Selker clearly identified to the jury the specific sequence of screen taps that he contended satisfied the Single-Action Limitation, either literally or under DOE. Dr. Selker's DOE analysis built on his detailed literal infringement testimony. Thus, there was no basis to nullify the jury's verdict due to a purported failure to identify the relevant actions.

#### 2. Dr. Selker Clearly Explained How the Sequence of User Actions Triggers the Troubleshooting-Steps

Comcast's second argument is that JMOL was warranted because Dr. Selker did not clearly explain with linking testimony how the sequence of user actions triggers the Troubleshooting-Steps Limitations. This argument is fundamentally flawed for multiple reasons.

As discussed above in Section I(A), the DOE issue that NexStep presented to the jury was limited to the Single-Action Limitation and, in particular, if a short sequence of screen taps is at least equivalent to a "single action." The jury was not

asked to decide if the Troubleshooting-Steps Limitations were satisfied under DOE. In fact, Comcast itself contends that "the only question on appeal is whether ***multiple*** user actions are equivalent to a single user action." Comcast Br. at 48 (emphasis in original). Thus, the jury's infringement verdict was based on finding the Trouble-Shooting Steps Limitations to be literally satisfied, and the Trouble-Shooting Steps Limitations are not relevant to this appeal.

Moreover, Comcast's argument ignores the detailed testimony that Dr. Selker provided during the literal infringement portion of his testimony. Specifically, after identifying the three infringing scenarios (Xfinity Assistant Infringement, Troubleshooting-Card Infringement, and Diagnostic-Check Infringement), Dr. Selker provided detailed testimony regarding how these processes each cause the home gateway to satisfy the Troubleshooting-Steps Limitations. This testimony linked the customers' short sequence of screen taps that satisfy the Single-Action Limitation to the Troubleshooting-Steps Limitations.

In particular, as summarized in the following table, Dr. Selker explained that after the user initiates one of the three troubleshooting processes, Comcast's home gateways respond to the users' action and (1) buffer consumer device information, (2) determine a support center, (3) initiate a support session, and (4) forward the identification information. Dr. Selker relied on Comcast's technical documents, source code, and deposition testimony to prove each of these points. Thus, there

was ample evidence to support the jury's finding that the users' short sequence of screen taps triggered all four of the Troubleshooting-Steps Limitations.

| Troubleshooting Step | Dr. Selker's Testimony | Evidence Cited By Dr. Selker |
|---|---|---|
| Buffering consumer device information | Appx436-439, 349:16-360:18 | Appx17007; Appx17239; Appx17321, Appx17325, Appx17327 |
| Determining a support center | Appx436-439, 349:16-360:18 | Appx17007; Appx17239; Appx17321, Appx17325, Appx17327 |
| Initiating a support session | Appx439-441, 360:19-369:19 | Appx17117-17121; Appx17164-17165; Appx17273, Appx17322 |
| Forwarding the identification information | Appx439-441, 360:19-369:19 | Appx17117-17121; Appx17164-17165; Appx17273, Appx17322 |

Thus, when Dr. Selker returned to the Single-Action Limitation to argue a short sequence of screen taps is at least equivalent to a single action, he had already provided detailed evidence, accepted by the jury, that those sequences cause the Troubleshooting-Steps Limitation to be satisfied. Accordingly, his DOE analysis was not "subsumed" into his literal infringement analysis, as Comcast incorrectly contends. Comcast Br. at 29.

### 3. Dr. Selker Explained Why a Short Sequence of Screen Taps is Insubstantially Different From a Single Action

Dr. Selker explained why a short sequence of screen taps is a single action by the user, or at least insubstantially different from a single action. Br. at 34-41. As set forth in NexStep's opening brief, Dr. Selker addressed each prong of the function-way-result test with clear linking testimony. *Id.* This was not a heavy lift

for Dr. Selker, as he was simply arguing that, for example, opening an app, logging in (which is not necessary after the first use), and tapping the Xfinity Assistant icon to start the Troubleshooting Steps is a single action, or at least essentially the same as a single action.

Dr. Selker's testimony was proportionate to the straightforward nature of the DOE question. Comcast's contention that Dr. Selker's analysis was "conclusory" is incorrect and inconsistent with the straightforward nature of the common sense DOE analysis. This Court has rejected similar "invit[ations] to reweigh the evidence and reexamine the credibility of the witnesses." *Nutrinova Nutrition Specialties & Food Ingredients GmbH v. Int'l Trade Comm'n*, 224 F.3d 1356, 1359 (Fed. Cir. 2000); *see also Interactive Pictures*, 274 F.3d at 1384 (Defendant "invites us to reweigh the evidence of substantial similarity in its favor. We cannot accept that invitation.").

Indeed, while Dr. Selker satisfied each prong of the function-way-result test with clear linking testimony, as discussed below, this Court has "reaffirmed that proof of equivalency is not a matter of formula, but of evidence appropriate to the case. . . [and] no specific formulation of evidence and argument is required." *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1191 (Fed. Cir. 1996). Thus, given the straightforward nature of the DOE question, Dr. Selker's testimony was more than sufficient.

**a) Dr. Selker Addressed the Function Prong**

With respect to the function prong of the test, Dr. Selker explained that the function of the "several button presses" was initiating the troubleshooting process "to debug" or "to diagnose your device," which is the same function as the Single-Action Limitation. Appx444-445, 382:20-385:1; Br. at 37, citing Appx444-445 (collecting testimony). Dr. Selker's recitation of this easy-to-understand function is self-evident, and did not require further technical explanation.

Comcast states that this function testimony was conclusory because Dr. Selker did not identify the screen taps or connect those screen taps to the Troubleshooting-Steps Limitation. Comcast Br. at 38-39. Comcast's contention is incorrect, as set forth in Sections I(A) and I(B)(2) above, and is premised on Comcast's conflation of the Single-Action Limitation with the subsequent home gateway Troubleshooting-Steps Limitation. *Interactive Pictures*, 274 F.3d at 1383 (rejecting challenge to DOE verdict that was based on an argument relating to functionality outside of the relevant claim limitation).

**b) Dr. Selker Addressed the Way Prong**

Comcast then contends that Dr. Selker's testimony regarding the way prong of the DOE test was "conclusory and unhelpful." Comcast Br. at 41. The District Court and Comcast failed to consider Dr. Selker's testimony as an integrated whole.

Dr. Selker testified that "the single action is communicating with the gateway, gathering information and making decisions about what to do to solve problems for the person." Appx428, 316:4-7. Dr. Selker followed that testimony by explaining that the short sequence of screen taps performs the function of initiating troubleshooting in the same way, referring back to his prior testimony. Appx445-446, 382:20-383:10 (referring back to prior testimony regarding infringement scenarios); Appx445, 384:13-385:1 (testimony regarding way prong).

Dr. Selker further explained that this short sequence of screen taps triggers the troubleshooting process without requiring the user to input data needed to identify the devices at issue, which is the same way as the claimed single action. *Id.* ("it's going to solve my problem without me having to go through and put in my model numbers and all of that."). Finally, Dr. Selker explained that the way in both the claims and the accused short sequence of screen taps is "using this Concierge [device] as more of a [device] to give authorization than to do the actual function," referring to the concierge device triggering the home gateway to cause the Troubleshooting Steps. *Id.*

Thus, Dr. Selker explained that the users screen taps cause the concierge device to trigger the home gateway to perform the Troubleshooting-Steps without requiring significant user input, which is the claimed way, satisfying the second prong of the function-way-result test.

### c) Dr. Selker Addressed the Result Prong

Finally, Comcast argues that Dr. Selker's "result" prong testimony was "untethered from the claim language" and too generalized. Comcast Br. at 41-42, quoting Appx17. Once again, Comcast looks beyond the straightforward Single-Action Limitation. The claimed result of the Single-Action Limitation is simply that, responsive to the single action, the home gateway is triggered to perform the Troubleshooting-Steps Limitations. Appx210, Claim 1.

Dr. Selker's testimony squarely addressed this result, testifying that after the short sequence of screen taps "the result is that this thing [the malfunctioning device] is going to be restarted, refreshed," i.e., that the troubleshooting process would be started. Appx445, 385:4-9.

Dr. Selker also explained that, consistent with the Single-Action Limitation, the troubleshooting process would happen automatically and without the user needing to put in technical data. Appx445, 385:2-9 (the process "is going to have to happen . . . without me having to tangle with understanding all of the issues of being an IT professional."). And this followed Dr. Selker's prior testimony that "it's all about you not having to put in data, you not having to figure out what's going on." Appx441, 369:10-370:25.

In sum, Dr. Selker's DOE testimony built upon his prior literal infringement testimony and addressed each prong of the function-way-result test. Dr. Selker's

testimony was proportionate to the simple and straightforward nature of his DOE proposition—that a short sequence of screen taps is equivalent to a single action. The jury reasonably agreed with Dr. Selker. And there was no basis for the District Court to have negated that judgment, especially when the "the evidence at trial [is] viewed in the light most favorable [to NexStep, as the party who] secured the jury verdict." *Nat'l Presto Indus.*, 76 F.3d at 1192 (citation omitted). Accordingly, reversal of JMOL is warranted. *Sun Studs*, 872 F.2d at 988 (reversing grant of JMOL of noninfringement because the jury's infringement verdict was "sustainable on the evidence and the law").

### C. Comcast Ignores That Common Sense is Sufficient to Sustain the Jury's DOE Verdict

An additional flaw in the District Court's grant of JMOL is that, even if Dr. Selker's opinion was unduly conclusory or deficient in linking testimony (which is not the case), expert testimony was not required and the jury's DOE infringement verdict can be sustained on common sense alone. Br. at 50-51.

Comcast did not dispute that this Court's "precedent does not require opinion testimony, and certainly does not require expert opinion testimony, for a finding of equivalence." *Id*. at 50 (quoting *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 966 (Fed. Cir. 2018)); *Nat'l Presto Indus.*, 76 F.3d at 1191 (DOE should be proven with "evidence appropriate to the case" and is not subject to a "specific formulation of evidence and argument [] required").

Here, no expert analysis was needed to decide the simple question of if a short sequence of screen taps—such as opening an app, logging in, and then tapping the Xfinity Assistant icon—is at least equivalent to a single action. This is no different from a jury deciding that making a phone call is a single action with subparts of opening the phone app, entering the digits of a phone number, and pressing call. Similarly, a jury would not require an expert to explain that the process of throwing a baseball is equivalent to a single action, even though it includes subparts of picking up the baseball, adjusting the grip, pulling an arm back and then snapping the arm forward and releasing the baseball. The short sequence of user screen taps to satisfy the Single-Action Limitation is no more complicated than these common-sense examples.

Comcast's characterization of the Single-Action Limitation as a complex issue that could only be understood with the help of detailed linking testimony from an expert is contrary to the straightforward DOE issue presented to the jury. As discussed above, Comcast relies on conflating the Single-Action Limitation with the Trouble-Shooting Steps Limitations, which were the subject of extensive detailed testimony by both sides' technical experts, but are beyond the scope of the DOE issue. Appx436-441, 349:16-369:19. Thus, common sense alone is sufficient to justify and reinstate the jury's infringement verdict.

### D. The Jury's DOE Infringement Verdict Does Not Vitiate the "Single Action" Limitation

The jury's agreement with NexStep that a short sequence of screen taps is at least equivalent to a single action is consistent with and does not vitiate the Single-Action Limitation. Vitiation only "comes into play when the alleged equivalent is 'diametrically opposed' to the missing claim element," which is not the case here. *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1367 (Fed. Cir. 2020). "[S]aying that a claim element would be vitiated is akin to saying that there is ***no equivalent*** to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016) (bolding added) (citations omitted).[1]

Here, a short sequence of screen taps is not the antithesis of a single action, thus vitiation does not apply. Dr. Selker explained that single actions often involve discrete sub-parts, such as a short sequence of screen taps, and that every action can be viewed as made up of sub-steps, even a simple process such as throwing a baseball. Appx460, 444:22-445:4 (describing multiple steps within the single action of throwing a baseball), Appx458, 438:14-25 ("all single actions are composed of some steps"). Comcast never disputed this basic proposition.

---

[1] The District Court did not reach the issue of vitiation. Appx17.

That a sequence of screen taps can be included within a single action is confirmed by the preferred embodiments in the ‘009 Patent. Br. at 19-22. These preferred embodiments require a series of screen taps that is very similar to the sequence in the MyAccount App. *See id.* (comparing screen shots of MyAccount App sequence with the ‘009 Patent figures). For example, the user would need to open the concierge device program, just as a Comcast user opens the MyAccount App. The ‘009 Patent explains that then the user would select the specific device to be supported (shown in Fig. 14A), which “causes initiation of a support session,” which then transitions to a different screen providing a “suggested fix” (shown in Fig. 14B below), where the user would press another button to “Start Call” to initiate a video or voice call (shown in Fig. 15 below). Appx186-187, Figs. 14A, 14B, 15; Appx191, 3:27-44; Appx196, 13:38-14:3; Appx200-201, 22:59-23:15 (all describing a device troubleshooting flow, which includes a sequence of screen taps on different screens). These disclosures confirm that the similar sequence of screen taps in the MyAccount App is consistent with and not antithetical to a single action. Thus, there is no vitiation.




FIG. 14A




FIG. 14B

Appx186 at Fig. 14A (showing device selection with red annotation added to show selection of TV), Fig. 14B (showing suggested fix and button for initiating a support video call with red annotation).




FIG. 15

Appx187 at Fig. 15 (showing support video call).

Comcast's cases regarding vitiation dealt with very different facts. For example, in *American Calcar, Inc. v. American Honda Motor Co.*, 651 F.3d 1318 (Fed. Cir. 2011), the Federal Circuit affirmed a finding that "a signal from one source cannot be equivalent to multiple signals from multiple sources" because the claims were specifically construed to require multiple sources in view of the specification. *Id.* at 1338-39. Here, Dr. Selker provided detailed testimony in support of equivalence and the specification confirms that a single action can encompass a

sequence of screen taps pushes. Thus, there was no vitiation to justify the District Court's grant of JMOL.

## II. SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '802 PATENT SHOULD BE REVERSED BECAUSE IT WAS BASED ON AN ERRONEOUS CONSTRUCTION OF "VOIP"

### A. The District Court Erred in Construing "VoIP" to Require Two-Way Conversations Between People

The District Court's grant of summary judgment was based on engrafting an erroneous requirement into "VoIP" that the remote control device be capable of a two-way voice conversation between two people. Appx122 (summary judgment order) ("A conversation requires at least two people. A 'voice conversation' transmitted over the internet implies two-way transmission."). "VoIP" is an acronym for a broad class of protocols used to permit "voice over Internet Protocol," which means carrying voice data over the Internet, and is not limited to two-way voice conversations between people. Appx3041-3042, ¶¶41-42. The record did not support the District Court's narrowing of the term. And, even under the District Court's incorrect construction, material disputed issues of fact precluded summary judgment.

#### 1. The Specification Confirms VoIP is Not Limited to Two-Way Conversations Between People

To defend the District Court's overly-narrow claim construction, Comcast argues that the '802 Patent is directed to phone-like devices and that VoIP originated as protocols for Internet-based telephony. Comcast Br. at 54-55. Comcast ignores

that the ’802 Patent specification teaches a variety of embodiments with different applications, only some of which involve two-way telephony for conversations. For example, the specification discloses applications that relate to the transmission of audio data over the Internet but do not relate to two-way conversations between people including “dictation, note taking, voice messaging, listening to music or remote viewing video.” Appx3042, ¶42 (quoting Appx16855, 3:51-59).

The inventive point of the ’802 Patent was separating the relatively inexpensive voice remote functionality needed to capture audio input (such as voice “control signals”) from the more expensive and complex functionality needed to send that voice data over the Internet. *See* Appx220, 1:34-2:6. In this way, the voice remote can be a simpler, lower-cost device, leveraging the more complex functionality already embedded in the set top box or other master device. *Id.* This allows the ’802 Patent to achieve a low-cost remote control device that is the front-end for voice functionality. *Id.*

Both Comcast and the District Court relied primarily on extrinsic evidence to limit VoIP to two-way voice conversations between people. However, the intrinsic evidence of the ’802 Patent discussed above and in NexStep’s opening brief (at 55-58), contradicts the extrinsic evidence put forth by Comcast and the District Court. Extrinsic evidence is “less significant than the intrinsic record” and cannot “contradict claim meaning that is unambiguous in light of the intrinsic evidence,” as

is the case here. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317, 1324 (Fed. Cir. 2005) (citations omitted).

And even the extrinsic evidence confirms that VoIP includes one-way transmission of audio data that is different from a two-way conversation between people. For example, Newton's Telecommunication Dictionary describes the use of VoIP to send "voice emails" that are one-way transmissions of voice data, just like the voice commands sent by Comcast's set top boxes. Appx9035 (Newton's Telecommunication Dictionary).

#### 2. The File History Confirms VoIP is Not Limited to Two-Way Conversations

Comcast misreads the file history as supporting the District Court's narrow construction, when it actually illustrates the error in the construction. Comcast Br. at 56. Specifically, Comcast cites to remarks by an Examiner during prosecution of the '130 Patent relating to being "based in a telephony art." *Id.*, (quoting Appx3630).

Critically, in the summary of the interview, NexStep explained that during the discussion with the Examiner, NexStep had proposed "two alternatives for amending [prosecution] claims 32 and 49, following the Examiner's comments about being based in a telephony art unit." Appx3630. NexStep's first proposal, which NexStep did not follow when it amended the claims, "involved the remote control depending on the master device to connect a user to a telephone network." *Id.*

NexStep's "other [proposal], which is substantially as reflected in [NexStep's amendments]" "positively claims what the remote control does and what it doesn't do—what it must rely on another device to do." *Id.* Specifically, NexStep added the limitation that the remote control depends on the master device for transcoding between VoIP and the remote control device format, but decided not to include a limitation requiring telephony functioning. Appx3625. Thus, the file history reflects a rejection, not incorporation, of a two-way telephony-like conversation requirement into these voice remote claims.

### 3. Claim Differentiation Confirms VoIP is Not Limited to Two-Way Conversations

Comcast fails to explain away the impact of claim differentiation on the proper scope of VoIP. The varying claims of the '802 Patent (and related patents sharing the same specification) confirm that the voice remote should not be required to include functionality to receive and output voice data from the master device in addition to capturing and sending user voice data. For example, claim 1 of the '802 Patent is directed to user audio data sent from the remote controls to a master device including "control signals" (i.e., one-way audio data transmission), but says nothing about the remote control receiving or outputting any audio from the master device as would be required for a two-way conversation between people. Appx230 ("the remote control device depends on the master device to transcode input . . . to VoIP .

. . and relies on the master device to respond to control signals sent by the remote control device in the packets”).

In contrast to the one-way audio transmission from the remote control to the master device, claims 4 to 6 variously recite claim limitations that the remote control device have the ability to receive and output audio data from the master device including two-way telephone calls. These two-way audio limitations include:

- “audio and video reproduction;”
- “audio and video outputs;”
- “decode [received packets] into signals to drive the slaved [audio] outputs;”
- “audio I/O [input/output] features;”
- “receiv[ing] voice over IP (VOIP) audio signal packets . . [and transcoding] them to a remote control device format suitable to drive at least one slaved output on the remote control device;” and
- providing “telephone call” functionality.

Appx230-231.

The implication, under both claim differentiation and common sense, is that not all of the remote control devices must be capable of receiving and outputting audio data from the master device, let alone capable of a two-way conversation between people, because only some of the claims include these two-way limitations. A device with only a microphone and no audio output cannot support a two-way

conversation. The other claims that do not include these limitations only require one-way transmission of audio data from the remote control to the master device.

Comcast argues that claim differentiation should not apply because claim 4 of the '802 Patent (unlike asserted claims 1 and 7) does not require the use of VoIP. Comcast's argument is undermined by related patents sharing the same specification as the '802 Patent which specifically require the use of VoIP and still include express limitations requiring that the remote control device can output audio data received from the master device. These limitations would be rendered superfluous if the use of VoIP protocol necessarily required both audio input and output to permit two-way conversations.

For example, Claim 1 of U.S. Patent 8,494,132 ("'132 Patent") recites "[a] remote control device with slaved audio reproduction" where the remote control receives and outputs audio data (i.e., is capable of a two-way conversation). Appx16885. Claims 7 and 12 of the '132 Patent include similar limitations that the remote control can receive and output audio data. *Id.* These claims all expressly recite the use of VoIP in addition to requiring audio output. *Id.* The same is true for many other claims recited in NexStep's related patents. *See, e.g.*, Appx16864 (Claim 1 of U.S. Patent 7,697,669 requiring that the voice remote include "at least a slaved microphone and a slaved audio output"). Thus, the usage of VoIP in NexStep's patents makes clear that VoIP is not limited to applications with two-way

conversations between people because some of the VoIP claims include limitations for audio output and others do not.

Accordingly, "VoIP" should be construed as an Internet Protocol for carrying voice data, the grant of summary judgment should be reversed, and the case should be remanded for further proceedings under that construction.

### B. Even Under the District Court's Erroneous Construction, Material Factual Disputes Precluded Summary Judgment

Even if the District Court's construction of VoIP was correct (which it is not), it was error to grant summary judgment of non-infringement in view of material factual disputes. The District Court construed VoIP as "[p]rotocols and data formats for transmitting voice conversations" between people. Appx41; Appx122 ("A conversation requires at least two people."). Neither the construction nor the asserted claims require an actual two-way voice conversation. Comcast Br. at 54 ("this construction does not require that the protocol be ***used only*** to handle two-way communication") (emphasis in original). Rather, as Comcast concedes, even under the District Court's construction, the most that is required to be considered VoIP is that the "protocol be ***capable*** of handling two-way voice communications." *Id.* (emphasis in original).

Indeed, VoIP protocols can be used to carry two-way conversations, satisfying the Court's construction, but can also be used to carry spoken words in one direction. For example, Newton's Telecommunication Dictionary describes the use of VoIP to

send "voice emails" that are one-way conversation messages, just like the voice commands sent by Comcast's set top boxes. Appx9035 (Newton's Telecommunication Dictionary). Comcast has never contended that VoIP cannot be used to carry voice audio data in only one direction. Similarly, Comcast's technical expert, Dr. Chatterjee admitted that VoIP protocols and formats can be applied to carry a one-way flow of spoken words, which is what NexStep accuses of infringement. Appx8725-8727, 259:9-261:12.

Accordingly, even under the District Court's construction, the proper question for infringement was if the ADPCM over HTTP protocol used by Comcast's set top boxes to communicate with Comcast's servers is a VoIP protocol, as construed by the District Court; not if Comcast's voice remotes are capable of being used for a two-way voice conversation. The jury should have decided the disputed question of if ADPCM over HTTP is a protocol capable of carrying a voice conversation. Comcast Br. at 54 (VoIP is a protocol "***capable*** of handling two-way voice communications) (emphasis in original).

It is undisputed that Comcast's set top boxes receive voice commands (such as "go to Disney channel") from the voice remotes and then send those audio voice commands over the Internet to Comcast's servers using ADPCM over HTTP, an Internet Protocol. Appx6871-6872 (capturing audio data); Appx6465-6466, ¶109; Appx6973-6975, ¶¶41-45 (sending audio data to set top box); Appx6973-6975,

¶¶43, 45 (sending audio data in ADPCM over HTTP packets through the Internet); Appx122 (District Court: "There does not appear to be any dispute regarding how the accused devices operate . . . '[a] user speaks a command . . . into the microphone of the voice remote, and the captured audio is sent by the set-top box over a protocol called HTTP to Comcast's servers.'") (quoting Appx15980).

The question of if ADPCM over HTTP can carry a two-way voice conversation is a disputed factual issue. Comcast does not deny that HTTP can convey audio messages (nor could it, as Comcast relies on HTTP to do just that). And since ADPCM over HTTP can undisputedly carry spoken words in one direction, there is no reason (and, certainly Comcast identifies no reason), it cannot be used to do so in two directions, thereby permitting a two-way conversation. Appx5383-5384 (Comcast's rebuttal report), ¶174 ("[The Xfinity Set-Top Box] simply sends the ADPCM data in chunks to the VREX server via HTTP over Internet Protocol until the user releases the microphone button, indicating that the command is complete.").

The testimony of NexStep's experts does not support summary judgment. NexStep's validity expert, Dr. Reinman, did not admit "that VoIP protocols are different from those used for other audio alone," as Comcast incorrectly contends. Instead, he testified that VoIP protocols can be used for both two-way and for one-way transmission of audio data. Appx5484, 89:12-23 ("[I]f I were dictating a book

. . . I would still consider that audio data that goes over voice over IP" . . . So whether it's a conversation, a narration, a footage or whatever of audio data, I think the general sense would be with voice over IP that you're sending voice.").

Comcast also misstates the record in contending that NexStep's infringement expert, Dr. Wolf, conceded that ADPCM over HTTP is not VoIP. Comcast Br. at 62. To the contrary, discussing the application of the District Court's construction, Dr. Wolf stated that ADPCM over "HTTP is a request-response protocol used in packet switched networks . . . that is capable of transmitting voice conversations, and [] thus meets the [District] Court's construction." Appx9062 (Wolf Reply Report), ¶41. Dr. Wolf confirmed during her deposition that "chunked ADPCM over HTTP could be used for bidirectional communication between parties." Appx5465, 247:8-248:4. "Bi-directional communication between parties" is a technical expert's way of saying two-way conversation between people.

Thus, there is a genuine factual dispute as to if ADPCM over HTTP is capable of carrying a two-way conversation between people and, therefore, meets the District Court's construction of VoIP. Therefore, even if the construction of VoIP is not reversed, the grant of summary judgment should be vacated and the jury should decide if Comcast's voice remotes infringe the '802 Patent. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1302 (Fed. Cir. 2011) (disputed issues of fact precluded summary judgment where "the claim construction itself [was] not

contested, but the application of that claim construction to the accused device [was].”).

## III. THE DISTRICT COURT ABUSED ITS DISCRETION IN EXCLUDING NEXSTEP’S DAMAGES CASE

### A. Mr. Reading’s Starting Point for Dividing the Cost Savings to Comcast From its Infringement Was Based on the Facts of the Case

The District Court abused its discretion in excluding Mr. Reading’s opinion that, based on the specific facts of the case, the parties would have started royalty negotiations with a 50/50 split of Comcast’s substantial cost savings from infringement. The District Court incorrectly found that the “facts offered by Plaintiff could be true of a negotiation of cost-savings technology (or anticipated profits) by any two parties, meaning that they are not particular to the facts of this case.” Appx141. This is wrong on both the facts and the law. Mr. Reading relied on the particular facts of the case and these specific facts were specific to the parties and what they would have considered during the hypothetical negotiation. Indeed, there is no legal requirement that the relevant facts that exist in this case have to be unlike every other case.

As set forth in NexStep’s opening brief, Mr. Reading’s analysis was neither random nor arbitrary and was grounded on specific facts of the parties at the negotiating table, NexStep and Comcast, and how they would agree to divide cost-savings to Comcast generated by using NexStep’s patented technology in the

MyAccount App. Br. at 62-63. Mr. Reading relied on multiple case-specific facts that would have informed the hypothetical negotiation including that (1) the parties would have identified Comcast's cost savings from reduction in customer service interactions and truck rolls as the royalty base, which Comcast's internal documents identified as an important goal, (2) these cost savings would be pure profit to Comcast, (3) there were additional benefits to Comcast from infringement beyond cost savings, such as improvements in customer satisfaction, a fact established at trial, and (4) Comcast was much larger than and had more leverage than NexStep. *Id.* These are the relevant facts specific to this particular case. Indeed, Comcast does not identify any additional relevant facts that Mr. Reading should or could have considered for purposes of determining the appropriate starting point and offers no counter-proposal for a reasonable starting point.

The District Court's claim that the facts relied on by Mr. Reading "could be true of a negotiation . . . by any two parties" (Appx141) misstates Mr. Reading's analysis, as he never suggested that a 50/50 split would apply to any cost-savings negotiation. This was a negotiation between a large infringer who had a strong need and desire to save on costs and improve customer satisfaction, and a much smaller patent owner who had the patented solution for reducing Comcast's costs. Appx9193-9195, ¶¶ 176-184. NexStep was eager for a first license. Appx9195, ¶184. Comcast's leverage was offset by the customer satisfaction benefits it would

realize from infringement in addition to its cost savings and the fact that Comcast would be able to capture all of the cost-savings as pure profit, which would not be the case in many scenarios (for example, where at least some of the cost-savings would necessarily be passed on to the customer). Appx9151-9158, ¶¶28-53. Thus, these facts are particular, not universal.

Comcast mischaracterizes Mr. Reading's opinion as limited to two sentences in his opening report. Comcast Br. at 64. Mr. Reading set forth the factual basis for his starting point and then his subsequent application of the *Georgia-Pacific* factors throughout his opening report, reply report, and deposition testimony. *See, e.g.*, Appx9628-9633, 291:9-296:3 (considering that costs savings are "pure profit" as supporting a 50/50 split and discussing adjustments based on *Georgia-Pacific* factors); Appx9250-9252 (discussing lack of competitor relationship between NexStep and Comcast, benefits to Comcast beyond cost savings, and need for Comcast to have a sufficient incentive to take a license as supporting 50/50 split as a starting point); Appx9410 (discussing appropriateness of 50/50 as a starting point in view of the record). Mr. Reading also noted the absence of evidence suggesting a different starting point, such as prior licensing patterns based on a different split. *Id.*

In addition, Mr. Reading's analysis went well beyond the high-level categories that the District Court and Comcast focused on. For example, in support

of Mr. Reading's finding that Comcast would have been highly motivated to obtain a license, given the importance it places on cost savings through the MyAccount App and the importance of the infringing functionality to customer satisfaction, Mr. Reading relied on:

- Comcast's extensive promotion of the MyAccount App troubleshooting features;
- the testimony of Comcast's Product Manager that the infringing MyAccount App "contributes in a . . . pretty broad way to customer satisfaction," customers "like" it, and there is an "analysis that shows a correlation between MyAccount usage and . . . retention of a customer;"
- Comcast's tracking of usage of the infringing repair functionality in MyAccount App as one of only three "key performance indicators;"
- testimony that Comcast relies on the MyAccount App's automation as "part of [its] overall customer experience strategy" and to reduce expenses;
- Comcast's identification of the MyAccount customer service functionality as one of its top ten most impactful customer service features; and
- Comcast's internal campaign to reduce its costs through use of this functionality.

Appx9217-9225 (Reading Report), ¶¶244-261 (citing evidence). Similarly, Mr. Reading's conclusions regarding the size and relative leverage of the parties was also based on specific factual evidence particular to this case. Appx9151-9158, Appx9194-9195 at e.g., ¶¶ 28-53, 179-184.

Mr. Reading relied collectively on these particular factual considerations and his expertise to reach his conclusion that the parties would have started the negotiation as equals with a 50/50 split and then negotiated to a 60/40 split in favor

of Comcast based on the additional considerations set forth in the *Georgia-Pacific* factors. Therefore, he satisfied the requirement that the opinion "be tied to the relevant facts and circumstances of the particular case at issue and the hypothetical negotiations that would have taken place in light of those facts and circumstances at the relevant time." *Uniloc*, 632 F.3d at 1318.

The District Court erred as a matter of law in effectively requiring NexStep's damages expert to rely on unique facts, as opposed to the specific and actual evidence that existed, such as the parties' relative size and leverage, and the financial and other benefits to each party, as discussed above. *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330-34 (Fed. Cir. 2014), cited by the District Court and Comcast, is inapposite. In that case, the Court rejected the application of the Nash Bargaining Solution "without sufficiently establishing that the premises of the theorem actually apply to the facts of the case at hand." *Id.* at 1332 ("The Nash theorem arrives at a result that follows from a certain set of premises. It itself asserts nothing about what situations in the real world fit those premises. Anyone seeking to invoke the theorem as applicable to a particular situation must establish that fit."). *VirnetX* does not apply because Mr. Reading did not apply the Nash Bargaining Solution and did not otherwise invoke a theorem based on unestablished premises. Instead, Mr. Reading explained the factual reasons that supported his conclusion, as discussed above.

Thus, Mr. Reading's analysis was not "plucked out of nowhere," as Comcast contends.

Ultimately, Comcast's issues with Mr. Reading's opinions should have been addressed through cross-examination, with the jury ultimately deciding the appropriate split to apply to Comcast's cost savings. *ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*, 694 F. 3d 1312, 1333 (Fed. Cir. 2012) ("[D]isagreements . . . with the conclusions reached by [plaintiff's] expert and the factual assumptions and considerations underlying those conclusions, not his methodology . . . go to the weight to be afforded the testimony and not its admissibility."); *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002) ("A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination.").

Accordingly, the case should be remanded for a trial on damages.

## B. NexStep Should Be Permitted to Provide a Revised Damages Case

### 1. NexStep Asked the District Court For an Opportunity to Supplement its Damages Case

To the extent the District Court's exclusion of Mr. Reading's damages opinion is not reversed, NexStep should be permitted to provide a revised damages case. Comcast's claim that NexStep is making this request for the first time on appeal is plainly incorrect. Comcast briefly argues that NexStep somehow "forfeited" its

argument, but does not assert waiver, nor would it have any basis to do so. *See* Comcast Br. at 69.

Specifically, the District Court held a hearing on damages issues three days before the trial. Appx16274 (hearing transcript). At that hearing, the District Court asked NexStep how it proposed to proceed if its damages case was excluded. Appx16281, 29:6-21. NexStep responded that "[w]e ask for leave to go in and revise our expert report to bring it into compliance and bifurcate the case . . . ." *Id.* at 29:22-30:3. NexStep also proposed postponing "the entire trial a few months down the road until we can redo the damages component." *Id.* at 30:16-24. That evening, the District Court issued an order by email excluding all evidence regarding damages from the trial and denying NexStep's request for bifurcation of damages or to defer the trial. Appx136.

Thus, Comcast's argument that NexStep somehow "forfeited" its request to supplement Mr. Reading's damages report if the case is remanded is without merit because (1) NexStep did request to supplement, (2) the District Court considered and rejected NexStep's request to supplement, and (3) Comcast fails to cite any law or legal principal for its "forfeiture" argument.

#### 2. A Reasonable Royalty Must Be Awarded Where Infringement Is Found

Comcast should not be given a free pass on its infringement. Section 284 and this Court's precedent require that no less than a reasonable royalty be awarded when

a party is determined to have infringed. 35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370 (Fed. Cir. 2003); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). The award of such damages is not optional where there is evidence in the record to support a reasonable royalty, even if the District Court has to approximate the reasonable royalty based on the available evidence. *Dow Chem.*, 341 F.3d at 1381-82 & n.4 ("35 U.S.C. § 284 . . . is unequivocal that the district court must award damages in an amount no less than a reasonable royalty.").

The cases Comcast cited for the proposition that it is appropriate to award a zero reasonable royalty do not apply here. Comcast Br. at 71. While the Court stated that a fact-finder may award no damages in *Apple Inc. v Motorola, Inc.*, the Court was clear that such an outcome is only appropriate where there is no evidence whatsoever of a reasonable royalty tied to the type of infringing activity that was found to occur. 757 F.3d at 1330.

Similarly, in *TecSec*, the patentee only presented evidence of a reasonable royalty tied to its indirect infringement theory, but the jury found only that the defendant directly infringed. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291-92 (Fed. Cir. 2020). Because there was no evidence of a reasonable royalty for the defendant's direct infringement at all, it was appropriate for the district court in that

case to reduce to zero the reasonable royalty for direct infringement, which was limited to testing and use by defendant's employees as opposed to sales of the infringing product. *Id*.

In contrast to those cases, here, NexStep provided evidence, which the District Court found passed muster under *Daubert*, that Comcast had realized very large cost savings directly attributable to its infringement of NexStep's '009 Patent by significantly reducing the number of times it needed to send service teams to customers' homes (truck rolls) and reducing the number or and length of call to customer support call centers. Appx9148; Appx9179-9180 (Reading Report), ¶¶118-122 (describing methodology for estimating Comcast's cost savings) . The District Court rejected Comcast's challenges to that evidence and opinion. Appx143.

The District Court only disagreed with Mr. Reading's opinion as to where the parties would have started the negotiations over how to split that cost savings. Thus, the District Court accepted the opinion and evidence that there was a substantial royalty base from which damages should be awarded. *Id.* This takes NexStep's damages case outside of the ambit of the cases Comcast cited where there was no evidence of damages at all.

As this Court has explained, a "royalty estimate that is [in]correct does not, by itself, justify awarding a royalty of zero," which is essentially the outcome of the

District Court's exclusion of NexStep's damages case on the eve trial.[2] *Apple Inc.*, 757 F.3d at 1328 (citing *Dow Chem.*, 341 F.3d at 1382 n.4).

Finally, other than its incorrect "forfeiture" argument, Comcast offers no reason this Court should not, at a minimum, remand for NexStep to have an opportunity to revise its damages case. This Court remanded cases for a ***third*** trial on damages in both *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960 (Fed. Cir. 2022) and *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 980 (Fed. Cir. 2018). There is no reason NexStep should not be afforded a first opportunity to address any issues in its damages case, especially in view of the very substantial cost savings Comcast has realized through its infringement.

Thus, to the extent the Court declines to reverse the District Court's exclusion of Mr. Reading's starting-point opinion, the case should be remanded for NexStep to present a supplemental damages case.

---

[2] Comcast's citation to *MicroStrategy Inc.* (Comcast Br. at 70-71) is irrelevant to the issue before the Court because in that case the damages opinions and testimony that were excluded pertained to a tort claim, not a claim for patent infringement, which statutorily requires an award of a reasonable royalty. *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1353 (Fed. Cir. 2005).

# CROSS-APPEAL OPPOSITION

## IV. STANDARD OF REVIEW FOR CROSS-APPEAL ISSUES

In its cross-appeal, Comcast asks this Court to reverse the District Court's denial of summary judgment on the issue of patent eligibility. Comcast Br. at 72-78. The law of the regional circuit applies because the summary judgment standard is not an issue unique to patent law. *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1365 (Fed. Cir. 2019). The Third Circuit reviews denials of summary judgment de novo, drawing all reasonable inferences in the light most favorable to the non-movant. *Id.* (citing *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012)). Summary judgment is appropriate only when "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

Patent eligibility under 35 U.S.C. § 101 is ultimately an issue of law which the Court reviews de novo. *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022). "Eligibility, however, may depend on underlying issues of fact." *Id.* (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367-68 (Fed. Cir. 2018)).

The District Court's subsidiary factual findings are not subject to de novo review, and should only be set aside if "clearly erroneous." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 836 (2015).

## V. THE '009 PATENT IS DIRECTED TO CONCRETE, PATENT-ELIGIBLE INVENTIONS

### A. The District Court's Order Denying Summary Judgment is Not Reviewable and Comcast Waived its New Eligibility Argument

Comcast waived its cross appeal. "[W]hen, as in this instance, a summary judgment motion does not present a pure issue of law and the issues it does present have not been raised and renewed by proper motions for judgment as a matter of law under Rule 50, those issues are not reviewable on appeal." *Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 185 (3d Cir. 2015).

Comcast did not renew its patent eligibility argument in a Rule 50 motion or otherwise present it to the District Court after the denial of its summary judgment motion. And the District Court's ruling was not a "pure issue of law" because it turned on facts, including the specific improvements provided by the asserted claims over then-conventional technology. *Id.* ("pure issue of law" exception applies only where the issue is capable of resolution '"with reference only to undisputed facts."') (quoting *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011)); Appx61 (finding that the "focus of the asserted claims is directed to a specific improvement to technology beyond improving the efficiency of a computer."). Thus, Comcast waived its cross appeal

by not further pursuing the issue after the District Court denied its motion for summary judgment.[3]

In addition, the Court should decline to exercise its discretion to hear Comcast's waived argument because Comcast "present[s] new issues on appeal" that it did not argue to the District Court. Defining the alleged "abstract idea" is the fundamental first step of a challenge to patent eligibility. Indeed, "one cannot meaningfully evaluate whether a claim preempts an abstract idea until the idea supposedly at risk of preemption has been unambiguously identified." *CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d 1269, 1282 (Fed. Cir. 2013) (Lourie, J. concurring), *aff'd*, 573 U.S. 208 (2014). On appeal, Comcast advances a new alleged abstract idea.

To the District Court, Comcast argued that the challenged claims were directed to the abstract idea of "obtaining customer support." Appx4907, Appx4910

---

[3] NexStep is not aware of any decision in which the Third Circuit squarely held that orders denying summary judgment are appealable notwithstanding the movant's failure to renew under Rule 50 where such orders have the practical effect of granting summary judgment for the nonmovant. *Cf. Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1322 (Fed Cir. 2020) (observing such precedent in the Federal Circuit). Nor did Comcast move the District Court to convert the order denying summary judgment into one granting summary judgment in favor of NexStep, from which it could appeal. *Cf. Brown v. Zurich-Am. Ins. Co.*, 137 F. App'x 476, 477-78 (3d Cir. 2005) (permitting appeal of decision denying summary judgment which "had the practical effect of granting [] summary judgment" where movant converted decision into final order so that "he could appeal.").

(Moving Brief); Appx12576, Appx12578 (Reply Brief). On appeal, Comcast now asserts that the Claims are directed to the abstract idea of "***exchanging information*** to obtain customer support." Comcast Br. at 72 (emphasis added). Thus, Comcast shifted its abstraction argument from customer support to exchanging data.

The District Court could not and did not address Comcast's new theory advanced on this appeal and this Court, therefore, lacks "the benefit of the [lower court]'s informed judgment." *Ericsson*, 955 F.3d at 1323 ("limiting the appealable issues to those a lower court had an opportunity to, and did, address.") (citation omitted); *cf. Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362-63 & n.3 (Fed. Cir. 2018) (declining to decide whether new articulation of abstract idea was waived, since the Court determined that the patent was not directed to the claimed abstract idea). Thus, the Court should decline to hear Comcast's new waived argument.

### B. The District Court Properly Denied Comcast's Motion for Summary Judgment Because the '009 Patent Claims are Patent Eligible

If this Court exercises its discretion to review the District Court's denial of summary judgment, Comcast's argument still fails. The District Court correctly denied Comcast's motion for summary judgment because the '009 Patent claims are non-abstract and thus patent-eligible under 35 U.S.C. § 101. Appx61 (report and recommendation); Appx174 (overruling objections to report and recommendation

and finding that the '009 Patent "in short, articulate[s] a specific technological improvement and the claimed invention is more than the mere automation of conventional customer support interactions"). At minimum, genuine disputes of material fact precluded summary judgment, dictating denial of Comcast's cross appeal.

#### 1. The '009 Patent Claims are Directed to a Specific, New Method of Providing Customer Support that Improved Existing Systems

The '009 Patent claims are focused on a specific improvement to customer service by describing a precise implementation based on a "concierge device," which is a unique device that did not exist before the '009 Patent. Appx8522-8525 (Balakrishnan expert report) ¶¶1407, 1410-1412. The District Court concluded that "the focus of the asserted claims is directed to a specific improvement to technology beyond improving the efficiency of a computer." Appx61. The concierge device interrogates consumer electronic devices in customers' homes, which report a unique identifier to the concierge device. Appx196-197, 14:50-15:2. The concierge device then programs itself to be associated with those devices by using the unique identifiers, so that it can manage the troubleshooting process for these devices—even if they come from different manufacturers. *Id*. at 23:66-24:15; 9:14-20; 9:59-10:13. The devices are then registered with a cloud-based service to facilitate

communication with customer service centers and access stored data about the devices. *Id.*

NexStep's technical expert provided the factual basis for finding eligibility. For example, the claimed concierge device "improv[es] the process by which multiple devices are programmed to communicate with each other and collect diagnostic information . . . using a process that causes the device to collect and buffer hardware information at network gateway and trigger a support session." Appx8524, ¶1411.

When there is a problem with a device, the customer uses the concierge device to initiate a troubleshooting session. Appx201, 23:66-24:15; Appx194, 9:14-20; 9:59-10:13. The concierge device obtains diagnostic data from the malfunctioning device. *Id.* These data are buffered by a home gateway, which then provides the device identification and the device diagnostic data to a customer service center. Appx201, 23:66-24:19. Depending on the claim, the device and diagnostic data can be used to select a service center for the particular device or problem, to initiate an automated troubleshooting protocol, or to obtain customer service while bypassing an automated attendant or IVR. *See, e.g.*, *id.* at Appx210-211, Claims 1, 11.

As NexStep's expert explained, the claimed "solution overcame a number of problems, including '[f]or instance, the problem of providing a user centric, multi-purpose interface to diverse consumer devices (CA and CE devices) in a home . . .

.' This solution is reflected in the specific claim elements, which specify the relationship between and exchange of data and signals between the consumer device, the gateway, the concierge device, and the support center." Appx8526, ¶1414, (quoting Appx196,14:42-44).

The factual support for patent eligibility further includes that, at the time of the inventions in 2010, no such concierge device existed, and obtaining customer service for the many devices in consumers' homes was a frustrating, disjointed and time-consuming process. Appx8519-8520, ¶¶72-76; Appx8522-8523, ¶¶1407-08; Appx8530-8534, ¶¶1426, 1431-34. In then-conventional approaches, if a device was malfunctioning, a customer first needed to figure out the number to call for the manufacturer of the particular product. Then, the customer had a typically annoying interaction with automated prompts or an interactive voice recognition system ("IVR")—which did not have any information about the customer or the malfunctioning device. Next, the customer spoke with a human customer service agent – who also did not have any information about the customer or the device. At this point, the customer needed to provide identification information, the serial and model number for the product (which often involved unplugging the device), and a description of the problem. Appx196-197, at 14:40-15:4.

NexStep's expert explained that the claimed implementations provide a technological solution by managing a more accurate troubleshooting process for

multiple devices at home, responsive to customers' single actions. Appx8519-8520, ¶¶72-75; Appx8522-8530, ¶¶1407-1423; Appx191, 3:64-4:1 (distinguishing conventional systems), Appx201, 23:65-25:44. The reduction of both the number of calls to customer service (through automated troubleshooting) and length of customer service calls (by providing diagnostic data to the agent) resulted in very substantial cost savings to Comcast. Br. at 15-17.

Contrary to Comcast's factual arguments on appeal, the concierge device is neither conventional nor obvious. Appx8522-8523, ¶¶1407-09; Appx8529-8530 ¶¶1421-23, Appx8534-8535, ¶1436. After hearing testimony from both sides' technical experts, the jury rejected Comcast's arguments and found that the claims' components and ordered combination of elements was not found anywhere in the prior art. Appx552-556, pp. 657-671; Appx657, 911-912 (Comcast's argument at trial regarding obviousness); Appx159 (jury verdict finding claims non-obviousness). Thus, the jury found there was no such thing in the prior art as NexStep's claimed concierge device that captured all of the foregoing concepts to create a better method of obtaining customer service in the home environment.

#### 2. The '009 Patent Claims are Patent Eligible Under *Alice* Step 1

The '009 Patent claims are non-abstract because, as detailed above, they are directed to a specific implementation to improve customer service systems, as opposed to broadly covering any form of customer service. *Enfish, LLC v. Microsoft*

*Corp.*, 822 F.3d 1327, 1335-39 (Fed. Cir. 2016) (finding claims patent eligible because they were directed to "specific" implementation designed to allow for claimed improvement; claims not merely directed to "any form" of storing data); *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) ("[T]he abstract idea exception prevents patenting a result where 'it matters not by what process or machinery the result is accomplished.'") (citation omitted).

To argue otherwise, Comcast abandons the abstract idea it advanced before the District Court, and commits the cardinal sin of '"oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *Id.* at 1313 (citation omitted). Indeed, Comcast's attempt to oversimply these claims as generically covering customer service is undone by its own assertions elsewhere in its brief that "the ***claims of the '009 patent are <u>directed to specific</u> methods*** and devices." Comcast Br. at 5-7 (emphasis added).

Comcast argues that the '009 Patent claims are ineligible because they "automate" processes "typically performed by the consumer." *Id*. at 73. As discussed above, the concierge device applied a new, unconventional approach, not previously used by consumers. Moreover, this Court has held that "processes that automate tasks that humans are capable of performing are patent eligible if properly claimed." *McRO*, 837 F.3d at 1313. Namely, claims are non-abstract where they "as a whole" recite a "specific" solution that is different from and better than the

human approach, as is the case here. *Id*. at 1312-15 (distinguishing cases where "the claimed computer-automated process and the prior method were carried out in the same way.").

For example, in *McRo*, this Court found patent eligible a process that used specific rules to automate animation techniques to synch faces with dialogue. *Id.* at 1315. People had been doing this manually for decades, but the manual approach was "very tedious and time consuming, as well as inaccurate." *Id*. at 1306. The invention went beyond simply automating the manual process on a computer and, instead, provided a different and better "integrated method" "limited to rules with specific characteristics" to achieve more accurate, rapid, and cost-effective animation. *Id.* at 1307, 1313; *see also Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019) (patent-eligible claims "recite a specific means or method that solves a problem in existing technological process").

Similarly here, as described above and as Comcast itself contends for purposes of arguing non-infringement, the '009 Patent claims "are directed to specific methods and devices" (Comcast Br. at 5) to achieve a paradigm shift in customer support, creating an entirely new and better method for which no analogy exists in conventional customer service models. As the District Court found, "[t]he claims of the ['009 Patent] do not merely add automation to increase the efficiency of customer service interactions." Appx173. The District Court linked the benefits

of the invention to the claimed limitations: "[t]hey describe a particular improvement over prior computing technologies in the form of a concierge device that links to consumer devices and forwards a malfunctioning device's identification information and diagnostic data to customer service." *Id.* There was nothing analogous in then-conventional customer service.

These improvements are enabled by the specific structure, components and data set forth in the '009 Patent claims, such as the reliance on enrollment signals, unique identifiers, diagnostic data collected by the concierge device, and the home gateway. Appx8529-8530, ¶¶1420-1422. In other words, it is the incorporation of the particular limitations of the claims, "not the use of the computer, that 'improved [the] existing technological process' by allowing the automation of further tasks." *McRo*, 837 F.3d at 1314-15 (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 223 (2014)).

The concierge device and its specific claimed connections and functions is analogous to *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018), where computer security claims were found eligible because they "employ[ed] a new kind of file that enables a computer security system to do things it could not do before." This new kind of file enabled greater security, rather than covering the abstract idea of "computer security writ large." *Id.* Here, the concierge

device employs a new, interconnected home device ecosystem, and not just the broad concept of customer service.

Comcast suggests that patents related to customer service are *per se* ineligible. Comcast Br. at 74. There is no such rule. The cases upon which Comcast relies involved generic claims that were directed to merely "providing technical support" without more, and the District Court found that NexStep's "specific technological solution is not comparable to the generic claims recited in the cases relied upon by Defendant." Appx62; *Nice Sys. Ltd. v. Clickfox, Inc.*, 207 F. Supp. 3d 393, 398 (D. Del. 2016) (claims provided a generic environment to carry out abstract idea, with no technical improvements); *Uniloc USA, Inc. v. Big Fish Games, Inc.*, 320 F. Supp. 3d 1178, 1186 (W.D. Wash. 2018) (reciting generic steps and patentee provided "almost no further explanation or argument to explain" why claims were anything "more than the theoretical abstract idea" of providing service at centralized site).

By contrast, the '009 Patent claims go beyond merely providing customer service, and are directed to a specific manner of providing customer troubleshooting service via a concierge device networked with a host of consumer devices and linked to the cloud by the home gateway. This Court has repeatedly found similar claims providing specific methods and improvements to be patent eligible. *See, e.g.*, *Core Wireless*, 880 F.3d at 1362-63 ("Although the generic idea of summarizing information certainly existed prior to the invention, these claims are directed to a

particular manner of summarizing and presenting information in electronic devices" and "recite a specific improvement over prior systems"); *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1010-11 (Fed. Cir. 2018) (distinguishing cases where claims were "simply directed to displaying a graphical user interface or collecting, manipulating, or organizing information," finding patent-eligible claims that recite "a specific structure . . . within a particular spreadsheet display that performs a specific function").

Finally, Comcast's argument that the concierge device is ineligible on account of its "functional language," only highlights Comcast's improper overgeneralization and decontextualization of the Claims. Comcast Br. at 75. This Court distinguished claims drafted in a functional manner which have the effect of covering a result regardless of how that result is obtained, from claims that "recite a specific means or method that solves a problem in an existing technological process." *Koninklijke*, 942 F.3d at 1150. The '009 Patent claims are directed to particular components that have particular features and are arranged in a particular manner. The recited components perform a function and achieve a result, but what is claimed is a particular arrangement of particular components, not the abstract idea of exchanging information to obtain customer support.

All of this supports the District Court's conclusion that the '009 Patent claims are far from abstract and are directed to an entirely new device, with specific,

concrete limitations. These claims are, therefore, patent eligible under the first step of the *Alice* test.

### 3. The Asserted Claims are Patent Eligible Under *Alice* Step 2

Because the asserted claims are not directed to an abstract concept, the Court need not reach *Alice* Step 2. Nonetheless, the patent eligibility of the asserted claims is further confirmed at Step 2 because "the claim elements, individually and as an ordered combination" contain an inventive concept, as they involve "more than" performance of "'well-understood, routine, [and] conventional activities previously known to the industry,'" and Comcast failed to meet its burden proving otherwise. *Coop. Ent.*, 50 F.4th at 130 (citation omitted).

As discussed with respect to infringement and *Alice* Step 1, the '009 Patent claims cover a novel concierge device that collects unique identification and diagnostic data from consumer electronics devices, and relies on a single action from a user to cause the home gateway to perform the four Troubleshooting-Steps Limitations.

Comcast is mistaken in stating that the District Court "did not address Step 2." (Comcast Br. at 75). To the contrary, the District Court found that Comcast failed to meet its burden at Step Two because it "does not address the claim limitations as an ordered combination . . . [i]nstead, Defendant separately addresses each claim limitation before adding in a conclusory fashion that '[t]here is also

nothing inventive about the ordered combination of these elements.'" Appx64 (citation omitted). Comcast again fails to meet its burden on appeal. Comcast merely repeats verbatim the same conclusory assertions that the District Court held were deficient. *Compare* Comcast Br. at 78 *with* Appx4919. On this front, Comcast offers nothing beyond the factual allegations the District Court already considered and rejected.

Comcast's repeated inability to meaningfully address the ordered combination speaks volumes. As described above, the ordered combination of the asserted claim elements—including the concierge device, consumer device, home gateway, cloud-based service, the functions they perform and the interactions between them—discloses an inventive concept; namely, an entirely new concierge device and method of troubleshooting that did not exist before the patent. *See* Appx8528-8535, ¶¶1419-23, 1431-34, 1436.

Even as to the claim elements individually, Comcast falls far short of its burden of proving ineligibility "by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1367-68. Comcast merely declares in conclusory fashion that certain of the patent's components and steps were "conventional," citing its asserted prior art. *See* Br. 76-77 (*citing* Appx17652-53 (Berner Patent); Appx 17659, 17673 (Cassanova Patent) Appx 17589,17595 (Werth Patent)). As this Court held, "[t]he

mere fact that something is disclosed in a piece of prior art . . . does not mean it was well-understood, routine, and conventional." *Berkheimer*, 881 F.3d at 1369.

More fundamentally, Comcast is wrong about the scope of the prior art. Comcast mischaracterizes the components and steps as "conventional" by overgeneralizing the claims and ignoring the facts and evidence. For example, Comcast mischaracterizes the concierge device as "conventional hardware and/or software" by ignoring that it was construed by the District Court as a device *that meets all of the claim requirements* described above—and that such a device was *entirely new* and not disclosed in any of its asserted prior art. *See* Appx8522-8535, ¶¶1407-09, 1421-23, 1436.

Comcast likewise mischaracterizes the home gateway by ignoring the specific functions it must perform. *See* Section I(B)(2). Similarly, Comcast isolates and overgeneralizes "example[s]" of processes recited in the claims in order to assert that they disclose the mere "sending and receiving of information," like the patent found ineligible in *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1329, 1332 (Fed. Cir. 2017). However, Comcast ignores the specific limitations of the claims which go well beyond the mere exchange of information. *See* Appx8529-8530, ¶¶1420-22. For this reason, Comcast's heavy reliance on *Intellectual Ventures I* is misplaced. At best, Comcast identifies a factual dispute that precludes summary judgment, as set forth below.

#### 4. At Minimum, Genuine Disputes of Material Fact Preclude Summary Judgment

This Court has made clear that "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer*, 881 F.3d at 1367-68. As stated above, Comcast merely points to its asserted prior art as purported support for its assertions that certain components and steps were conventional. *See* Comcast Br. at 76-77 (citing Appx 17652-53 (Berner Patent); Appx 17659, Appx17673 (Cassanova Patent) Appx17589, Appx17595 (Werth Patent)).

However, Comcast's allegations about conventional technology at best raise a material dispute. NexStep's expert, Dr. Balakrishnan, explained that the claim elements were not "well-known, routine, or conventional at the time of the invention." Appx8522-8523, Appx8529-8535, ¶¶1407-1409, 1421-23, 1434, 1436. At trial, Dr. Balakrishnan gave detailed testimony explaining how all of Comcast's asserted references are different from the asserted claims of the '009 Patent. *See, e.g.*, Appx573-576, 741:17-751:22 (testimony regarding Werth). The jury agreed with Dr. Balakrishnan and rejected Comcast's obviousness arguments. Appx159; Appx161.

Thus, at best, Comcast presented a factual dispute as to whether the asserted claims are conventional that could not be resolved on summary judgment. *Berkheimer*, 881 F.3d at 1367-68. Comcast failed to further pursue this dispute after

the District Court denied summary judgment, and the continuing genuine factual disputes preclude a grant of summary judgment on appeal. *Id.*

## CONCLUSION

For the foregoing reasons (1) the JMOL Order should be reversed and the jury's verdict finding infringement of the '009 Patent reinstated, (2) the claim construction of VoIP and summary judgment of non-infringement of the '802 Patent should be reversed and remanded for a trial on infringement of the '802 Patent, and (3) the *Daubert* Order should be reversed and the case remanded for a trial on damages for Comcast's infringement of the '009 Patent. In addition, (4) Comcast's cross-appeal for summary judgment of patent ineligibility of the asserted claims of the '009 Patent should be denied.

Respectfully submitted,

Dated: January 20, 2023

By: */s/ Paul J. Andre*

Paul J. Andre
Lisa Kobialka
James R. Hannah
Christina M. Finn
Kramer Levin Naftalis
& Frankel LLP
333 Twin Dolphin Dr., Suite 700
Redwood Shores, CA 94065
Tel: 650.752.1700
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
cfinn@kramerlevin.com

Aaron M. Frankel
Cristina Martinez
Carlos J. Tirado
Kramer Levin Naftalis
& Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Tel: 212.715.9100
afrankel@kramerlevin.com
cmartinez@kramerlevin.com
ctirado@kramerlevin.com

*Attorneys for Plaintiff-Appellant*
NexStep, Inc.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. Cir. R. 28.1(b)(1) because this brief contains 13,207 words, exclusive of the parts of the filing as exempted by Fed. Cir. R. 32(b)(2).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.

Dated: January 20, 2023

*/s/ Paul J. Andre*
Paul J. Andre

*Attorneys for Plaintiff-Appellant,*
NexStep, Inc.