**Nos. 2022-1815, -2005, -2113**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

NEXSTEP, INC.,

*Plaintiff-Appellant*,

*v.*

COMCAST CABLE COMMUNICATIONS, LLC,

*Defendant-Cross-Appellant.*

On Appeal from the United States District Court for the District of Delaware in Case No. 1:19-cv-01031-RGA, Judge Richard G. Andrews

## REPLY BRIEF FOR DEFENDANT-CROSS-APPELLANT COMCAST CABLE COMMUNICATIONS, LLC

WILLIAM F. LEE
SARAH B. PETTY
GEORGE F. MANLEY
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

LAUREN MATLOCK-COLANGELO
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

February 17, 2023

THOMAS G. SAUNDERS
AMY K. WIGMORE
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

MARY V. SOOTER
WILMER CUTLER PICKERING
HALE AND DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80202
(720) 274-3135

*Attorneys for Defendant-Cross-Appellant Comcast Cable Communications, LLC*

# CERTIFICATE OF INTEREST

Counsel for Defendant-Cross-Appellant Comcast Cable Communications, LLC certifies the following:

**1. Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Comcast Cable Communications, LLC

**2. Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3. Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

Comcast Cable Communications, LLC is a wholly-owned, indirect subsidiary of Comcast Corporation

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP: Jack B. Blumenfeld, Brian P. Egan, Andrew Mark Moshos

WILMER CUTLER PICKERING HALE AND DORR LLP: Alexis Cohen; Arthur W. Coviello; Nina Garcia; Rauvin A. Johl; Jason H. Liss; Aaron Macris; H. Rachael Million-Perez; Kevin J. O'Brien; Nora Q.E. Passamaneck; Kelli J. Powell; Kate M. Saxton; Phillip Takhar; Kathryn Zalewski

**5. Related Cases**. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

Ex parte reexamination No. 90/014,991 (U.S.P.T.O.)

Ex parte reexamination No. 90/015,074 (U.S.P.T.O.)

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: February 17, 2023

/s/ Thomas G. Saunders
THOMAS G. SAUNDERS
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST .................... i

TABLE OF AUTHORITIES .................... iv

INTRODUCTION .................... 1

ARGUMENT .................... 2

I. COMCAST'S CROSS-APPEAL IS PROPERLY BEFORE THIS COURT .................... 2

A. The District Court's Eligibility Determination Is Reviewable .................... 2

B. Comcast Is Not Making A New Eligibility Argument .................... 6

II. NEXSTEP'S PATENT ELIGIBILITY ARGUMENTS ARE UNAVAILING .................... 10

A. The '009 Patent Claims Are Directed To Conventional Components Used To Perform Routine Functions .................... 10

B. NexStep's Shifting Articulation Of The Claimed Subject Matter Does Not Confer Patent Eligibility Under *Alice* Step 1 .................... 14

C. NexStep's Conclusory Assertions Regarding An Alleged Inventive Concept Do Not Confer Eligibility Under *Alice* Step 2 .................... 23

CONCLUSION .................... 26

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Brown v. Zurich-American Insurance Company*,
137 F. App'x 476 (3d Cir. 2005) (nonprecedential)........................................5

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*,
No. 2:14-cv-911-JRG-RSP, 2016 WL 1106438 (E.D. Tex. Mar. 20, 2016) ........................................8

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*,
880 F.3d 1356 (Fed. Cir. 2018) ........................................8, 21, 22

*Data Engine Technologies LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018) ........................................21, 22

*Electric Power Group, LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ........................................22

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ........................................16

*Ericsson Inc. v. TCL Communication Technology Holdings Ltd.*,
955 F.3d 1317 (Fed. Cir. 2020) ........................................6, 9, 10

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
879 F.3d 1299 (Fed. Cir. 2018) ........................................17, 18

*Frank C. Pollara Group, LLC v. Ocean View Investment Holding, LLC*,
784 F.3d 177 (3d Cir. 2015) ........................................4

*Frank V. Pollara Group LLC v. Ocean View Investment Holding, LLC*,
No. 9-60, 2013 WL 171087 (D.V.I. Jan. 10, 2013)........................................4

*Gaus v. Contair Corp.*,
363 F.3d 1284 (Fed. Cir. 2004) ........................................7

*Harris Corp. v. Ericsson Inc.*,
417 F.3d 1241 (Fed. Cir. 20015) ........................................7, 9

*In re Gale*,
856 F. App'x 887 (Fed. Cir. 2021) (nonprecedential)........................................14

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019) ........................................................................19

*Lava Trading, Inc. v. Sonic Trading Management, LLC*,
445 F.3d 1348 (Fed. Cir. 2006) ..........................................................................8

*Lighting Ballast Control LLC v. Philips Electronics North America Corp.*,
790 F.3d 1329,1338 (Fed. Cir. 2015) ..................................................................6

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
566 U.S. 66 (2012)........................................................................................ 13-14

*McRO, Inc. v. Bandai Namco Games America, Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ........................................................................17

*NICE Systems Ltd. v. Clickfox, Inc.*,
207 F. Supp. 3d 393 (D. Del. 2016), *aff'd*, 698 F. App'x 615 (Fed. Cir. 2017) ....................................................................................19, 20

*Parallel Networks, LLC v. Abercrombie & Fitch Co.*,
704 F.3d 958 (Fed. Cir. 2013) ..........................................................................26

*Simio, LLC v. FlexSim Software Products, Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) ........................................................................14

*Solutran, Inc. v. Elavon, Inc.*,
931 F.3d 1161 (Fed. Cir. 2019) ........................................................................14

*Uniloc USA, Inc. v. Big Fish Games, Inc.*,
320 F. Supp. 3d 1178 (W.D. Wash. 2018), *aff'd*, 777 F. App'x 517 (Fed. Cir. 2019)....................................................................................20, 21

*Webb v. City of Philadelphia*,
562 F.3d 256 (3d Cir. 2009) ................................................................................9

## STATUTES

28 U.S.C. § 1295(a)(1).............................................................................................3

35 U.S.C.
§ 101 ........ *passim*
§ 102 ........ 13, 14
§ 103 ........ 13, 14

## INTRODUCTION

Comcast's principal brief demonstrated the reversible error in the district court's determination that claims 1, 16, and 22 of the '009 patent were "not, as a matter of law, directed to an abstract idea at *Alice* step one." Appx174; Comcast Br. 72-78. In reply, NexStep seeks to distract from the merits by arguing that Comcast impermissibly appeals from the mere denial of its motion for summary judgment on patent ineligibility. NexStep Reply 45-46. But the district court entered final judgment of patent eligibility "in favor of NexStep," Appx2, and Comcast's appeal is proper.

NexStep's conclusory assertion that Comcast raised a "new alleged abstract idea" on appeal (NexStep Reply 46) is also incorrect. As the record demonstrates, Comcast has consistently argued that the claims of the '009 patent are directed to the automation of conventional customer service tasks traditionally performed by users. Indeed, NexStep does not even try to identify any substantive difference in the positions Comcast advanced below and now advances on appeal.

NexStep's arguments on the merits are similarly unavailing. NexStep's reply presents a shifting sands approach to eligibility, arguing simultaneously that its claims are directed to "a specific implementation to improve customer service systems," (NexStep Reply 51), a "concierge device and its specific claimed connections and functions," (*id.* at 54), "a specific manner of providing customer

troubleshooting service" (*id.* at 55), and "an entirely new device, with specific, concrete limitations" (*id.* at 56-57). But NexStep's divergent framing fails to mask the abstract focus of the claims on automating well-known customer service activities using conventional technology.

Affirming the district court's judgment of non-infringement on the '009 patent would obviate any need to address Comcast's conditional cross-appeal. Comcast Br. 72. But to the extent this Court reaches the issue of patent eligibility, it should hold that claims 1, 16, and 22 of the '009 patent are invalid under § 101 or, at minimum, that the district court's analysis should not have stopped at *Alice* Step 1. Indeed, if accepted, NexStep's attempt to stretch its claims for purposes of infringement would only highlight the abstract nature of the claimed idea.

## ARGUMENT

### I. COMCAST'S CROSS-APPEAL IS PROPERLY BEFORE THIS COURT

#### A. The District Court's Eligibility Determination Is Reviewable

NexStep's waiver argument rests on a mischaracterization of the record below and the nature of Comcast's conditional cross-appeal. Contrary to NexStep's assertion (NexStep Reply 45-46), Comcast is not appealing the mere denial of its summary judgment motion. Rather, Comcast appeals from the district court's entry of final judgment of patent eligibility "in favor of NexStep." Appx2 ("Judgment as a matter of law that … claims 1, 16, and 22 of the '009 patent are patent-eligible

under 35 U.S.C. § 101 is entered in favor of NexStep and against Comcast."). There is no question that this Court has jurisdiction to review a final judgment. 28 U.S.C. § 1295(a)(1).

NexStep's argument that Comcast "waived its cross appeal by not further pursuing the issue after the District Court denied its motion for summary judgment" (NexStep Reply 45-46) fails for multiple reasons. *First*, the district court did not merely deny Comcast's motion for summary judgment on the issue of patent eligibility. Instead, the district court made a sweeping ruling that claims 1, 16, and 22 of the '009 patent were "***patent eligible***" and "not, ***as a matter of law***, directed to an abstract idea at *Alice* step one." Appx174.[1] This ruling effectively entered summary judgment on the issue of patent eligibility in favor of NexStep. Indeed, counsel for Comcast had stated that if the district court were "inclined to adopt the" magistrate judge's report and recommendation on the issue of eligibility, it should "enter a judgment … as a matter of law so there wouldn't be an issue to try for the jury, and that would preserve the issue on appeal." Appx16074-16075(71:18-73:2). Two weeks later the district court ruled "as a matter of law." Appx174.

*Second*, Comcast addressed the issue of patent eligibility "after the District Court denied its motion for summary judgment" by filing a joint stipulation ***with***

[1] All emphasis added unless otherwise indicated.

***NexStep*** stipulating that the "Court has decided, ***as a matter of law***, that … claims 1, 16, and 22 of the '009 patent are not invalid under 35 U.S.C. § 101" and "[j]udgment as a matter of law that … claims 1, 16, and 22 of the '009 patent are patent-eligible under 35 U.S.C. § 101 shall be entered in favor of NexStep and against Comcast." Appx16839-16840. The joint stipulation also expressly contemplated that Comcast would challenge the district court's eligibility determination on appeal. Appx16840 ("Comcast's consent to this stipulation does not impair its right to argue in any appeal that … claims 1, 16, and 22 of the '009 patent are invalid under 35 U.S.C. § 101 for failure to recite patent eligible subject matter."). The district court subsequently entered final judgment on patent eligibility pursuant to this stipulation. Appx2.

NexStep's reliance on *Frank C. Pollara Group, LLC v. Ocean View Investment Holding, LLC*, 784 F.3d 177 (3d Cir. 2015), is misplaced. NexStep Reply 45. In *Frank C. Pollara Group*, the appellant challenged the district court's bare denial of its motion for summary judgment and not, as here, the district court's effective grant of summary judgment and subsequent entry of judgment as a matter of law in favor of the non-moving party. 784 F.3d at 184; *see also Frank V. Pollara Grp. LLC v. Ocean View Investment Holding, LLC*, 2013 WL 171087, at *4 (D.V.I.

Jan. 10, 2013) (summary judgment ruling holding that "[t]he facts presented in the record, preclude the entry of judgment in Defendants' favor").[2]

*Brown v. Zurich-American Insurance Company*, 137 F. App'x 476 (3d Cir. 2005), is even less helpful to NexStep. As NexStep concedes, the *Brown* Court found that the appellant had properly appealed from an order that "had the practical effect of granting [the appellee] summary judgment." *Id*. at 477-478; NexStep Reply 46 n.3. NexStep tries to distinguish *Brown* on the ground that the "movant converted" the district court's denial of summary judgment into a "final order so that 'he could appeal.'" NexStep Reply 46 n.3. But as explained above, Comcast did precisely that by (1) requesting judgment as a matter of law to "preserve the issue on appeal" at a district court hearing, Appx16074-16075(72:18-73:2); (2) filing a joint stipulation confirming the parties' desire for the district court to enter judgment as a matter of law on this issue, Appx16840; and (3) having final judgment of patent eligibility "entered in favor of NexStep and against Comcast," Appx2. Accordingly, *Brown* supports Comcast, and the principle that an appellate court "would not have jurisdiction over an appeal from an order denying summary judgment … is inapplicable." 137 F. App'x at 478.

---

[2] The caption of the district court's summary judgment ruling misspelled the name of Plaintiff "Frank C. Pollara Group" with the middle initial "V." *See* No. 1:09-cv-60-DWA (D.V.I.).

NexStep also does not dispute that this Court has found no waiver under nearly identical circumstances. NexStep Reply 46 n.3 (citing *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1322 (Fed. Cir. 2020)). In *Ericsson*, as here, the district court denied summary judgment on patent eligibility and concluded at *Alice* Step 1 that the challenged claims were "'not directed to an abstract idea' as a matter of law." 955 F.3d at 1321. This Court found that the district court's ruling was sufficiently final for purposes of appeal, explaining that "[o]nce the district court held that the [challenged claim] was not directed to an abstract idea at step one, there was no set of facts that" could have been "adduced at trial to change that conclusion. As a result, the district court effectively entered judgment of eligibility to [patentee]. 'This is sufficient to preserve the issue for appeal.'" *Id.* (internal citations omitted, quoting *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 790 F.3d 1329,1338 (Fed. Cir. 2015)). NexStep's waiver argument therefore finds no support under either Third Circuit law or this Court's precedent.[3]

### B. Comcast Is Not Making A New Eligibility Argument

There is also no support for NexStep's argument that Comcast is advancing a "new alleged abstract idea" on appeal. NexStep Reply 46. NexStep's argument

[3] For that reason, there is no need to decide in this case whether the issue is governed by regional circuit law or this Court's precedent.

focuses on the slight linguistic difference between "obtaining customer support" and "exchanging information to obtain customer support." *Id.* at 46-47 (emphasis omitted). But this Court has never required parties to use the exact same phrasing they used before the district court. Instead, this Court looks to whether the appellant's arguments have consistently embodied the same "concept." *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1251 (Fed. Cir. 20015) (asking whether the change in the appellant's argument was "so insubstantial that it represents 'the same concept' that [appellant] raised before the district court, in which case there would be no waiver"); *Gaus v. Contair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004) (finding no forfeiture where two claim construction "formulations employ somewhat different language" but "embody the same concept").

Here, the record shows that Comcast's arguments have consistently embodied the same concept—that the claims of the '009 patent merely automate conventional customer service information-exchange tasks traditionally performed by users. *Compare* Appx4912 (Comcast's summary judgment brief explaining that the claims of the '009 patent "are directed to automating conventionally user-performed steps for obtaining customer support, such as looking up a customer-service phone number, navigating an automated attendant or interactive voice-recognition system, and providing consumer-device information to a support agent") *with* Comcast Br. 73 ("The patent describes routine tasks familiar to anyone who has contacted

customer service, such as looking up a customer-service number, navigating an automated attendant or interactive voice-recognition system, conveying customer account information, and providing customer-device information to a support agent." (internal citations omitted)). Indeed, NexStep does not identify ***any*** substantive differences in the arguments Comcast advanced before the district court and is now advancing before this Court. NexStep Reply 45-47.[4]

The consistency of Comcast's arguments is further confirmed by the lack of any "meaningful change" in NexStep's own position or evidence. *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1353 (Fed. Cir. 2006) (no forfeiture where the "slight change" in the plaintiff's "theory has not resulted in any meaningful change in the defendants' position or evidence relied upon by the defendants at the trial court or on appeal"). Again, NexStep has not established that Comcast's purported change in theories has had any effect on NexStep's response. The record confirms that it has not. *Compare* Appx8453 (NexStep district court

[4] NexStep points to *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356 (Fed. Cir. 2018). But *Core* involved far more than a minor change in phrasing. Instead, the appellant in *Core* changed from arguing that the claims were "directed to the abstract concept of displaying an application summary window while the application is in an unlaunched state," *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 2016 WL 1106438, at *3 (E.D. Tex. March 20, 2016), to arguing that the claims were directed to the "abstract idea of an index," 880 F.3d at 1362. Moreover, this Court expressly declined to address the issue of forfeiture. *Id.* at 1361 n.3.

opposition brief arguing that "[t]he Customer Troubleshooting Claims cover a specific and concrete improvement to these convention[al] [customer service] systems that is based on providing customers with a 'concierge device'") *with* NexStep Reply 48 ("The '009 Patent claims are focused on a specific improvement to customer service by describing a precise implementation based on a 'concierge device,' which is a unique device that did not exist before the '009 Patent.").

For these reasons, NexStep has identified at most an "infinitesimal tweak in scope, devoid of any practical consequence." *Harris*, 417 F.3d at 1252 n.3 (no forfeiture where the "technical distinction" between the claim constructions raised before the district court and on appeal made no "practical difference" to the case). As this Court has found, such non-substantive changes do not result in forfeiture. *Id.* at 1252.

In any event, to the extent the Court's rulings in NexStep's appeal do not moot Comcast's conditional cross-appeal, it would be well within this Court's discretion to reach the issue of patent eligibility on appeal. *See Ericsson*, 955 F.3d at 1322 (noting that this Court has "discretion to hear issues that have been waived"); *Webb v. City of Philadelphia*, 562 F.3d 256, 263 (3d Cir. 2009) (noting court's "discretionary power to address issues that have been waived"); NexStep Reply 46 (acknowledging this Court's "discretion"). This is particularly true because "the issue of patent eligibility was fully briefed, argued, and decided below." *Ericsson*,

955 F.3d at 1322. Thus, although there was no forfeiture here, the Court need not definitely resolve that question because, to the extent it does not simply affirm the judgment of non-infringement, it can and should exercise its discretion to address the issue of law on patent eligibility decided by the district court.

## II. NEXSTEP'S PATENT ELIGIBILITY ARGUMENTS ARE UNAVAILING

In its opening brief, Comcast demonstrated that the '009 patent claims are patent ineligible because they are directed to the abstract idea of "exchanging information to obtain customer support" (Comcast Br. 72) and they fail to recite—both individually and as an ordered combination—an inventive concept sufficient to transform the abstract idea to a practical one (*id.* at 75-78). Rather than address Comcast's arguments on their own terms, NexStep attempts to distract from the merits, including by making sweeping and unsupported statements regarding the novelty and benefits of the claimed invention, shifting its articulation of the focus of the claims, and mischaracterizing the record below. But NexStep cannot escape the fact that the '009 patent claims merely automate conventional customer service information-exchange tasks without providing a patentable improvement over prior systems.

### A. The '009 Patent Claims Are Directed To Conventional Components Used To Perform Routine Functions

NexStep asserts that the '009 patent claims are "directed to a specific, new method of providing customer support that improved existing systems" (NexStep

Reply 48), but fails to identify a single step of the claimed method that was new. There is good reason for this—the claimed method merely requires the performance of routine functional steps, including "associating the concierge device with a selected consumer device," "buffer[ing]" and "forward[ing]" consumer device information, and "determin[ing] a support center," Appx210(42:45-60), all of which were well known in the prior art. *See* Comcast Br. 77 (citing Appx17589(¶46); Appx17595(¶91); Appx17652(8:31-39); Appx17653(10:53-62); Appx17659(21:29-34); Appx17673(¶23)). Indeed, NexStep concedes that "then-conventional approaches" for obtaining customer service involved a nearly identical process to the steps required by the claimed method—namely, contacting a general customer service line, navigating to the correct customer service agent, and providing the agent with information sufficient to identify the device and diagnose the problem. NexStep Reply 50.

In apparent recognition of the abstract and routine nature of the claimed method, NexStep argues that performing the method steps using a "concierge device" was a new addition to prior art customer service systems. NexStep Reply 48-49, 50. But that is plainly incorrect. As an initial matter, the district court construed the term "concierge device" in a generic fashion as "[a] device including functionality for the remote control of at least one consumer device and that meets the other claim requirements." Appx45. Further, NexStep's technical expert, Dr.

Selker, testified that there are ***no*** "physical constraints for what can be a concierge device." Appx5260(133:23-134:18).

Although NexStep contends that "at the time of the invention[] in 2010, no such concierge device existed" (NexStep Reply 50), it cites nothing but the unsupported (and often irrelevant) *ipse dixit* of its expert, Dr. Balakrishnan, for support. NexStep Reply 50 (citing Appx8519-8520(¶¶72-76) (explaining general requirements of the '009 patent claim limitations); Appx8522-8523(¶¶1407-1408) (opining that '009 patent claims are patent eligible "based on [Dr. Balakrishnan's] own knowledge and understanding of the state of the art at the time of the invention"); Appx8530-8534(¶¶1426, 1431-1434) (opining that claims of a patent not at issue in this appeal are patent eligible)). Further, the cited portions of Dr. Balakrishnan's analysis ignore the references listed in Comcast's responsive brief that disclose identical devices used to perform similar functions. Comcast Br. 76-77.

For example, an "apparatus to handle support contacts in a call center" was disclosed by the Berner reference in 2005. Appx17615(abstract, cover). Like the claimed "concierge device" at issue here, Berner disclosed a remote control with a button that a customer could press "to send a request for support to the call center." Appx17652(8:31-37) ("For example, a customer may experience difficulty changing channels and may press a button on their remote control to send a request for support

to the call center.”). Similarly, a device “for querying for an interactive assistant for communication over a network via [a] set-top box” was disclosed by the Cassanova reference in 2007. Appx17668(abstract, cover). Cassanova’s device could take the form of a remote control with a help button that a customer could press, which would cause “an interactive help assistance request” to be “sent from the [set-top box] over the communications network 140 and routed to the help desk server 100.” Appx17673(¶23). Finally, a device including “an agent that collects information important to determining the appropriate resources for the device and understanding the environment the devices are contributing to” was disclosed by the Werth reference in 2010 before the ’009 patent’s invention. Appx17571(abstract, cover). Werth’s device was “associated with a customer account on the centralized service,” allowing a customer to “press a button on a personal digital assistant (PDA) or an icon on a smartphone to contact a customer service representative ….” Appx17589(¶46).

Rather than address the prior art disclosures, NexStep argues that none of Comcast’s cited references disclose the claimed concierge device because the jury found the asserted claims to be not invalid at trial. NexStep Reply 51. But NexStep’s argument incorrectly equates the requirements for patent eligibility under 35 U.S.C. § 101 with the requirements for validity under § 102 and § 103—a comparison the Supreme Court and this Court have long rejected. *See, e.g.*, *Mayo*

*Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 90 (2012); *In re Gale*, 856 F. App'x 887, 890 (Fed. Cir. 2021) ("There is no inconsistency in rejecting a claim under § 101 despite the lack of a rejection under § 103."); *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1364 (Fed. Cir. 2020) ("the search for an inventive concept under § 101 is distinct from demonstrating novelty under § 102"); *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019) ("merely reciting an abstract idea by itself in a claim—even if the idea is novel and non-obvious—is not enough to save it from ineligibility").

Moreover, no evidence was presented to the jury regarding whether the claimed concierge device was a "new and useful" invention under Section 101 because the district court decided Comcast's eligibility challenge as a matter of law before trial and NexStep waived its "right to have any issues of fact" regarding patent ineligibility "decided by the jury." Appx16074-16075(72:5-10). As such, the jury's validity verdict has no bearing on whether the claimed concierge device was conventional for purposes of the Section 101 analysis.

### B. NexStep's Shifting Articulation Of The Claimed Subject Matter Does Not Confer Patent Eligibility Under *Alice* Step 1

Comcast explained in its principal brief that the '009 patent claims were directed to the abstract idea of "exchanging information to obtain customer service." Comcast Br. 72. In response, NexStep argues that the challenged '009 patent claims are directed to a non-abstract idea for purposes of the *Alice* step 1 analysis (NexStep

Reply 51-57), but articulates that idea in at least five different ways: (1) "a specific implementation to improve customer service systems," (*id.* at 51), (2) "specific methods and devices to achieve a paradigm shift in customer support, creating an entirely new and better method for which no analogy exists in conventional customer service models," (*id.* at 53 (citation omitted)), (3) "[t]he concierge device and its specific claimed connections and functions," (*id.* at 54), (4) "a specific manner of providing customer troubleshooting service via a concierge device networked with a host of consumer devices and linked to the cloud by the home gateway," (*id.* at 55), and (5) "an entirely new device, with specific, concrete limitations" (*id.* at 56-57).[5]

NexStep's shifting and vague description of the claimed subject matter cannot change the focus of the claims on the abstract idea of exchanging information to obtain customer support. *First*, NexStep's characterization of the claims as having a "specific" focus is inconsistent with the understanding of the claims used by its expert, Dr. Selker, for his infringement analysis. For instance, during his deposition, Dr. Selker argued that there are ***no*** "physical constraints for what can be a concierge

---

5 The district court's decision, which is the basis for this cross-appeal, held that the challenged '009 patent claims were directed to "a concierge device that links to consumer devices and forwards a malfunctioning device's identification information and diagnostic data to customer service." Appx173. This articulation of the focus of the claims is different from each of the ideas that NexStep advances in support of affirming the district court's decision.

device" (Appx5260(133:23-134:18)), and that the claimed home gateway could consist of ***any*** hardware, software, or combination thereof. Appx5265(166:14-25). Further, Dr. Selker argued that "no single action does anything in the world" (Appx458(438:18-22)) and testified at trial that "several button presses along the way" was equivalent to the claimed "single action" (Appx445(384:5-12)). By contrast, to argue that the claims are patent eligible, NexStep contends that the claims are directed to "specific implementation[s]," (NexStep Reply at 51), "specific methods and devices" (*id.* at 53), "specific claimed connections and functions" (*id.* at 54), and "a specific manner of providing customer troubleshooting service" (*id.* at 55). NexStep thus attempts to characterize the claims as covering something specific to survive Comcast's patent ineligibility challenge, while at the same time it relies on Dr. Selker's broad application of the claims to allege infringement. NexStep cannot have it both ways. Comcast has brought a conditional cross-appeal precisely because, even though NexStep should not be allowed to stretch its claims for purposes of infringement, to the extent it were able to do so, it would only serve to highlight the abstract nature of the claimed idea.

*Second*, NexStep fails to identify a single "specific asserted improvement in computer capabilities" disclosed by the claims. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-1336 (Fed. Cir. 2016). Instead, NexStep merely summarizes the invention of the '009 patent by describing the claimed components and functional

steps and asserts in a conclusory fashion that they allegedly improve "customer service systems." NexStep Reply 51. For example, NexStep argues that "the concierge device applied a new, unconventional approach, not previously used by consumers." *Id.* at 52. But NexStep never identifies what portion of the "approach" applied by the concierge device was "unconventional" or new. Nor could it—as NexStep conceded, the claimed method merely uses the concierge device to automate certain steps that were previously performed by the customer. *Id.* at 50.

NexStep's reliance on *McRO, Inc. v. Bandai Namco Games America, Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) and *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018) is therefore misplaced. The claim in *McRO* disclosed automating part of a pre-existing 3-D animation method that was previously performed by an animator using a computer to "manually determine[] the appropriate morph weight sets for each keyframe based on the phoneme timings in the timed transcript." 837 F.3d at 1303-1306. It disclosed a new and useful rule to determine "when to set keyframes" and how to "set[] those keyframes." *Id.* at 1307. Although the pre-existing method required animators to perform the "determining" and "setting" steps automated by the claimed rule, it also required animators to perform a series of additional steps, including evaluating sub-sequences and generating or applying transition parameters. *Id.* at 1314. The claimed rule eliminated the need to perform those steps, thereby improving the prior method by

increasing the accuracy of, and lowering the costs associated with, 3-D animation. *Id.*

The claim in *Finjan* recited a system and method for "providing computer security at a network gateway by comparing security profiles associated with requested files to the security policies of requesting users." 879 F.3d at 1302. Prior systems employed a "code-matching system" to provide computer security, which "simply look[ed] for the presence of known viruses." *Id.* at 1304. By contrast, the claim in *Finjan* recited a brand new "behavior-based" virus scan, which "analyze[d] a downloadable's code and determine[d] whether it perform[ed] potentially dangerous or unwanted operations" (*id.*), and which improved prior computer security systems by "protect[ing] against previously unknown viruses" and "viruses that [were] cosmetically modified to avoid detection" by prior art systems (*id.*).

Unlike the claims in *McRO* and *Finjan*, which either eliminated and streamlined steps from pre-existing methods or disclosed brand new and improved methods, the '009 patent claims merely use a concierge device to automate the exact same steps a customer would ordinarily perform to exchange information for obtaining customer service. NexStep tries to point to the claims' reliance on "enrollment signals, unique identifiers, diagnostic data collected by the concierge device, and the home gateway" (NexStep Reply 54) as examples of the "specific structure, components, and data" that enable improvements to existing customer

service systems (*id.*). But the '009 patent claims never mention "enrollment signals," "unique identifiers," or "diagnostic data" (Appx210-211(claims 1, 16, and 22)), and do not purport to have invented a new "home gateway" or to use one in an unconventional fashion. Appx368(226:25-227:2) ("Q. Home gateways had been invented by others before 2010; correct? A. Home gateways did exist, absolutely, before 2010"); Appx5265(166:14-25) (NexStep's expert, Dr. Selker, opining that a home gateway could consist of any hardware, software, or combination thereof); Appx176-177 (citing prior art publications disclosing home gateways).[6]

*Third*, NexStep's assertion that Comcast "suggests that patents related to customer service are *per se* ineligible" (NexStep Reply 55) is wrong. Comcast made no such suggestion in its brief. Instead, Comcast identified several instances in which this Court has found claims directed to similar customer service ideas to be abstract at *Alice* step 1. Comcast Br. 74-75.

For example, in *NICE Systems Ltd. v. Clickfox, Inc.*, 207 F. Supp. 3d 393 (D. Del. 2016), *aff'd*, 698 F. App'x 615 (Fed. Cir. 2017), this Court affirmed the lower

---

[6] *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143 (Fed. Cir. 2019), also does not support NexStep's argument that the '009 patent claims disclose more than automating the process of exchanging information for obtaining customer service. NexStep Reply 53. When viewed in context, the passage NexStep cites from *Koninklijke* is limited to software inventions and is unrelated to automation of routine functional steps: "Since *Alice*, we have found software inventions to be patent-eligible where they have made non-abstract improvements to existing technological processes and computer technology." 942 F.3d at 1150.

court's finding of patent ineligibility at *Alice* step 1 regarding claims directed to "gathering customer information from one communication channel and using it to engage the customer via another communication channel." 207 F. Supp. 3d at 398. Just as NexStep has done in its reply brief, the plaintiff in *NICE* merely "parrot[ed] the claim language" during the *Alice* step 1 analysis, *id.* at 400, and concluded that the claims provided a specific improvement to prior systems through a new method for "how to provide call center agents (who only have access to customer service systems) with useful information about users' Internet session information (which is not available in customer service systems)," *id.* at 399. The district court disagreed that the plaintiff's reliance on "a series of generic computer components that perform the claimed method steps" as sufficient to demonstrate that the claimed idea was non-abstract under *Alice* step 1. *Id.* at 400. The same result should follow here.[7]

Further, in *Uniloc USA, Inc. v. Big Fish Games, Inc.*, 320 F. Supp. 3d 1178, 1185 (W.D. Wash. 2018), *aff'd*, 777 F. App'x 517 (Fed. Cir. 2019), this Court affirmed the lower court's finding of patent ineligibility at *Alice* step 1 regarding claims directed to a "method of applying service to a computer program that is to be

[7] NexStep's attempt to distinguish *NICE* by arguing that the claims it addressed "provided a generic environment to carry out [an] abstract idea, with no technical improvements" (NexStep Reply 55), ignores that the '009 patent claims implement the claimed method using conventional components and that NexStep has failed to identify a particular technical solution that the claims provide.

executed at a remote location connected to a central computer site of a computer network." 320 F. Supp. 3d at 1184. Just like NexStep's articulation of the focus of the '009 patent claims, the plaintiff in *Uniloc* argued that the claims improved customer service systems by "recit[ing] a method for providing customers individualized service remotely over a computer network." *Id.* at 1185. The district court disagreed and found under *Alice* step 1 that any improvement disclosed by the claims related only to the abstract idea of increasing "the efficiency of the abstract idea of providing customized service from a central site." *Id*. Again, the same result should follow here. NexStep's attempt to distinguish *Uniloc* by arguing that the claims at issue merely recited generic steps (NexStep Reply 55) ignores the fact that the '009 patent discloses the same kind of steps. Further, the passages NexStep quotes in support of this distinction related to the *Uniloc* Court's analysis under *Alice* step 2, rather than *Alice* step 1. *Id.* (citing *Uniloc*, 320 F. Supp. 3d at 1186).

NexStep is also wrong that "[t]his Court has repeatedly found similar claims" to those at issue here "to be patent eligible." NexStep Reply 55-56 (citing *Core Wireless*, 880 F.3d at 1362-1363 and *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1010-1011 (Fed. Cir. 2018)). For example, the claims in *Core Wireless* covered a "particular manner of summarizing and presenting information in electronic devices" 880 F.3d at 1362, which improved prior art user interfaces for electronic devices by "bringing together 'a limited list of common functions and

commonly accessed stored data'" to make it easier to access the information on a small screen, *id.* at 1363. Further, the claims in *Data Engine* covered "a highly intuitive, user-friendly interface with familiar notebook tabs for navigating the three-dimensional worksheet requirement" 906 F.3d at 1008, which "allowed computers, for the first time, to provide rapid access to and processing of information in different spreadsheets," *id.* Neither the claims at issue in *Core Wireless* nor the claims at issue in *Data Engine* covered subject matter related in any way to customer troubleshooting and, unlike the '009 patent claims, both disclosed concrete improvements to pre-existing systems.

*Fourth*, NexStep's argument that the '009 patent claims do not recite an abstract idea because they claim "a particular arrangement of particular components" (NexStep Reply 56) rather than functions designed to achieve a result is unpersuasive. As an initial matter, NexStep admits that the claims "perform a function and achieve a result" (*id.*), which is "a frequent feature of claims held ineligible under § 101." *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016). Further, NexStep fails to explain how the particular arrangement of the particular components disclosed by the '009 patent claims provides for anything more than the performance of functional steps by conventional components, and its expert testified that there are ***no*** "physical constraints for what can be a concierge device." Appx5260(133:23-134:18).

### C. NexStep's Conclusory Assertions Regarding An Alleged Inventive Concept Do Not Confer Eligibility Under *Alice* Step 2

In its principal brief, Comcast demonstrated that the '009 patent claims fail to disclose the requisite "inventive concept" required to confer eligibility under *Alice* step 2. Comcast Br. 75-78. In response, NexStep relies on mischaracterizations of the record and conclusory statements regarding the alleged novelty of the claimed components and functions to argue that the claims are directed to the inventive concept of an "entirely new concierge device and method of troubleshooting that did not exist before the patent." NexStep Reply 58. NexStep's arguments fail for several reasons.

*First*, NexStep misrepresents the district court's order denying Comcast's Section 101 summary judgment motion by asserting that "the District Court found that Comcast failed to meet its burden at [*Alice*] Step Two …." NexStep Reply 57. On September 17, 2021, the district court issued a five-page opinion considering Comcast's summary judgment motion and its objections to the Magistrate's Report and Recommendation, which recommended that the Court deny Comcast's motion. Appx169-174. Rather than adopting the Report and Recommendation in full, the district court conducted its own analysis and held that the '009 patent claims "are not, as a matter of law, directed to an abstract idea at *Alice* step one …." Appx174. Other than a passing reference in the "Legal Standards" section, the district court's decision never mentioned *Alice* step 2.

NexStep's only support for its allegation that "Comcast is mistaken in stating that the District Court 'did not address Step 2'" (NexStep Reply 57-58) is a passing reference from the Magistrate's Report and Recommendation (*id.* (citing Appx64)), which is immediately preceded by the Magistrate Judge's explanation that "[h]aving determined that the ['009 patent claims] are directed to an improvement to technology in the first step of the *Alice* analysis, ***the court need not reach step two of the analysis***" (Appx64 (emphasis added)). The statements cited by NexStep were made in *dicta* by the magistrate judge and were not included in the district court's decision. As such, the district court clearly did not reach step 2 of the *Alice* analysis and NexStep's assertions to the contrary are wrong.

*Second*, NexStep is also incorrect that Comcast failed to "meaningfully address the ordered combination" of the '009 patent claims. NexStep Reply 58. As Comcast explained in its principal brief, there is "nothing inventive about the ordered combination of [the '009 patent claim] elements" because the claims order the computer components "in a wholly conventional way: computers connected over a network, storing information, sending that information, and initiating communications to establish and conduct a customer-support session." Comcast Br. 78.

Further, NexStep fails to meaningfully engage with Comcast's argument, offering nothing in rebuttal other than the conclusory statement that "the concierge

device, consumer device, home gateway, cloud-based service, the functions they perform and the interactions between them," disclose the inventive concept. NexStep Reply 58. But this statement does not establish how the ordered combination of conventional components (*i.e.*, concierge device, consumer device, home gateway, and cloud-based service) performing routine customer service functions moves the claimed subject matter beyond the abstract idea of exchanging information to obtain customer support. And NexStep does not cite to a single passage from the '009 patent's specification or claims to demonstrate otherwise.[8]

*Third*, NexStep fails to put forward a single claim element that discloses an alleged inventive concept. NexStep Reply 58-59. Instead, NexStep resorts to accusing Comcast of "mischaracteriz[ing]," "overgeneralizing," and "ignoring" individual claim components without providing an explanation as to why. NexStep Reply 58-59. But as Comcast demonstrated above and in its principal brief, the claims clearly describe conventional components and assign them routine functions to perform. NexStep's conclusory attacks on this analysis fail to prove otherwise.

[8] NexStep's citations to Dr. Balakrishnan's report are unsupportive. Indeed, 6 of the 10 paragraphs cited by NexStep relate either to claims or patents that are not at issue in this appeal. NexStep Reply 58 (citing Appx8528-8535 ¶¶1423 (patent eligibility analysis for claim 11 of the '009 patent, which is not at issue in this appeal), 1431-1434 (patent eligibility analysis for '697 patent), 1436 (same)).

*Fourth*, NexStep is wrong that there is a material factual dispute regarding whether the ’009 patent claims disclose the requisite inventive concept under *Alice* step 2. NexStep Reply 60-61. Comcast has pointed to specific prior art references that make clear that the components described in the ’009 patent claims are conventional and that the functions that they are used to perform are routine. In rebuttal, NexStep has cited nothing but the unsupported (and often irrelevant) *ipse dixit* of its expert, Dr. Balakrishnan, which cannot be used to create a material dispute of fact for purposes of avoiding summary judgment. *Parallel Networks, LLC v. Abercrombie & Fitch Co.*, 704 F.3d 958, 970 (Fed. Cir. 2013) (“Dr. Cooper's *ipse dixit* statements … are not sufficient to avoid summary judgment.”).

## CONCLUSION

To the extent the Court does not affirm judgment of non-infringement on the ’009 patent, it should hold on the cross-appeal that the asserted claims of the ’009 patent recite patent-ineligible subject matter, or at minimum, that the district court’s analysis should not have stopped at *Alice* Step 1.

Respectfully submitted,

/s/ Thomas G. Saunders

THOMAS G. SAUNDERS
AMY K. WIGMORE
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

MARY V. SOOTER
WILMER CUTLER PICKERING
HALE AND DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80202
(720) 274-3135

WILLIAM F. LEE
SARAH B. PETTY
GEORGE F. MANLEY
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

LAUREN MATLOCK-COLANGELO
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

*Attorneys for Defendant-Cross-Appellant Comcast Cable Communications, LLC*

February 17, 2023

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS**

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1. The filing has been prepared using a proportionally-spaced typeface and includes 6,153 words.

2. The brief has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Thomas G. Saunders
THOMAS G. SAUNDERS
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

February 17, 2023